**SWEETWATER RUG CORP. and Cobble Bros. Machinery Co., Inc., Plaintiffs,**

v.

**J & C BEDSPREAD COMPANY, INC., Defendant.**

United States District Court
S. D. New York.
April 20, 1961.

Harry Price, New York City, for plaintiffs.

Davis, Hoxie, Faithfull & Hapgood, New York City, for defendant. Ernest P. Rogers, Thomas C. Shelton, Atlanta, Ga., of counsel.

HERLANDS, District Judge.

By complaint filed May 28, 1959, plaintiffs commenced this action for a declaratory judgment wherein plaintiffs seek (1) a declaration of the invalidity and noninfringement of United States Patents No. 2,879,728 and No. 2,879,729; (2) an order restraining the defendant and those acting in its behalf from threatening and issuing warning notices to the trade, customers, suppliers and associates of plaintiffs; and (3) damages, including costs and reasonable counsel fees.

Two actions presently are pending in the United States District Court for the Northern District of Georgia (Rome Division) with regard to the patents herein in suit. By complaints filed July 24, 1959 [Joseph K. McCutchen v. Ten-Tex Corporation of Georgia, CA-1166: Joseph K. McCutchen v. Cobble Bros. Machinery Co., Inc., and Kingston Mills, Inc. CA-1167], the plaintiff therein alleges infringement of United States Patents No. 2,879,728 and No. 2,879,729, of which he is alleged to be sole owner.

Of the litigants in the case at bar, only Cobble Bros. Machinery Co., Inc. is a party to either of the actions in the Northern District of Georgia.

Plaintiff Sweetwater Rug Corp. is a New York corporation. Plaintiff Cobble Bros. Machinery Co., Inc. is incorporated in Tennessee.

Defendant, J & C Bedspread Company, Inc., is a Georgia corporation. Its principal place of business is at Ellijay, Georgia. It is engaged in the manufacture and sale of tufted cotton textiles, in-

cluding bedspreads, rugs, carpeting and bath sets. The sole stockholders of defendant-corporation are J. K. McCutchen, its president, and his wife.

Defendant's motions seek the dismissal of the actions before this Court (1) for failure to join an indispensable party [motion No. 40]; and (2) on the grounds that (a) defendant is not doing business in New York and is not subject to service of process in the Southern District of New York and (b) defendant has not been served with process [motion No. 83]. In the alternative, defendant [in motion No. 83] asks the Court to quash the return of service.

Plaintiffs submit that the motion [No. 40] to dismiss for failure to join an indispensable party [F.R.Civ.P., rule 12 (b) (7), 28 U.S.C.A.] is out of order and not timely under Rule 12; and, secondly, that the indispensable party and the only party that the Court need consider is the corporate defendant. The Court cannot agree, for the reasons hereinafter set forth.

■ A motion to dismiss for failure to join an indispensable party may be made either before pleading or after. The defense of failure to join an indispensable party is an exception to the rule that a party waives all defenses and objections that he does not present either by motion or in his answer or reply, if he made no motion. F.R.Civ.P., rule 12(h). Thus, defendant would not be precluded from raising this defense even it had omitted it from its answer. However, defendant has not yet answered and is merely exercising its option to raise by motion the defense under rule 12(b) (7). See 3 Moore, Federal Practice, sec. 19.05 [2] (2d ed. 1948).

The party alleged to be indispensable is Joseph K. McCutchen, to whom U. S. Patents No. 2,879,728 and No. 2,879,729 were issued on March 31, 1957.

■ "A patent owner has a property right which ought not to be adjudicated in his absence." Technical Tape Corporation v. Minnesota Mining and Manufacturing Company, D.C.S.D.N.Y.1955, 135 F.Supp. 505, 508.

In Contracting Division, A. C. Horn Corporation v. New York Life Insurance Co., 2 Cir., 1940, 113 F.2d 864, plaintiff charged defendant and a contractor employed by it with infringing plaintiff's patent for a method of waterproofing masonry. Defendant counterclaimed for a declaratory judgment that the patent was invalid and not infringed. Eighteen months after the suit had been commenced, plaintiff discovered that, prior to the filing of the complaint, it had assigned the patent to Horn Research Laboratories Inc. and had taken back only a non-exclusive license. It moved to dismiss the complaint and counterclaim. The motion was granted as to the defendant-contractor but denied without prejudice to renew as against the defendant-insurance company. When renewed, the motion to dismiss was granted, and the defendant appealed. The Court of Appeals, in affirming, stated:

"If the plaintiff and Research are to be viewed as separate legal entities it is plain that the district court was right in dismissing complaint and counterclaim. When the suit was filed the plaintiff's interest in the patent was, and still remains, merely that of a non-exclusive licensee. As such the plaintiff cannot maintain a suit for infringement * * *. Nor can the appellant maintain its counterclaim without the presence of the patent owner." (At page 865.)

The Court of Appeals pointed out that disputes between a bare licensee and an alleged infringer as to the validity or infringement of a patent owned by another do not present an actual controversy as required by the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202.

■ If a patentee assigns his patent, title vests in the assignee; and title carries with it the right to sue infringers. But a transfer of rights short of an as-

signment is only a license whereby the licensee does not acquire title in the patent nor the right to sue in his own name for an infringement. Waterman v. MacKenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923.

In the absence of an independent right to bring an action for patent infringement, the licensee has no right to defend a suit seeking a declaration as to the validity of the licensed patent. Caldwell Manufacturing Co. v. Unique Balance Company, Inc., D.C.1855, 18 F.R.D. 258.

The record before the Court clearly indicates that the defendant-corporation does not hold title to the patents in suit but that it is a mere licensee. As such, it may not maintain an action for the patents' infringement. See Waterman v. MacKenzie, supra.

The United States Patent Office has certified that, as of October 19, 1960, no instrument is to be found in its records which would affect Patent No. 2,879,728, granted to Joseph K. McCutchen March 31, 1959. A similar certification indicates that, as of October 28, 1960, no instrument is to be found affecting Mr. McCutchen's title to U. S. Patent No. 2,-879,729. (See Appendix "D" attached to defendant's brief.)

By oral agreement concluded in 1938 or 1939 between Joseph K. McCutchen and the partnership which preceded the defendant-corporation, the company was to pay the cost of developing and processing Mr. McCutchen's inventions in exchange for the use of the patented items (Deposition of Joseph K. McCutchen, taken at Dalton, Georgia, May 6, 1960, pp. 45, 62). The original agreement involved four parties: Mr. McCutchen; his wife; his brother-in-law, J. Bandy; and his sister-in-law, Mrs. D. Tillman (McCutchen deposition, p. 63). The company later was incorporated. Sometime thereafter, Mr. McCutchen and his wife bought out the other two shareholders. The original agreement with regard to the use of the patents still continues (McCutchen deposition, p. 64). Only one patent developed under this agreement has been sold, and the proceeds of sale were received by Joseph K. McCutchen personally (McCutchen deposition, p. 61). In all, Mr. McCutchen has patented fifteen or twenty devices under this agreement (McCutchen deposition, p. 45).

The J & C Bedspread Company, Inc. is, at most, a licensee of the patents in suit. It may not defend a suit seeking a declaration as to the validity of the patents in the absence of the patent owner. Joseph K. McCutchen, the patentee, is an indispensable party to such action. His indispensability is not diminished by the fact that he is the president and a major stockholder of the corporate-defendant.

Estoppel may not be invoked against the defendant herein, as it was in A. L. Smith Iron Co. v. Dickson, 2 Cir., 1944, 141 F.2d 3, 4.[1] The defendant-

---

1. In the Dickson case, both parties appealed from a judgment enjoining the defendant from misusing Patent No. 1,864,-232 issued to one Harry Cocks but dismissing the complaint in so far as it sought a declaration that the patent was invalid.

Cocks assigned the patent to a British corporation which licensed it to defendant Dickson. The licensee had the right to sell the patented item in the United States for ten years. He did not have the right to grant sub-licenses except with the consent of the licensor and was not to " 'do or permit to be done any act or thing with respect to said letters patent which shall * * * in any way prejudice the rights of the licensors therein or the benefits and advantages conferred on the Licensors.' " In spite of his contract and without the consent of the Cocks company, Dickson granted licenses to three companies to make and sell the patented item.

Dickson wrote to plaintiff stating that a product sold by them violated the Cocks patent and that they (defendant) had Mr. Cocks' instructions that the patent was to be protected at any cost. Plaintiff filed suit to enjoin defendant from misusing the patent and for a declaration of the patent's invalidity. Dickson notified the Cocks company of the suit, and the company consented to the issuance of the sub-licenses by Dickson.

corporation does not claim the right to sue for infringement of the patents in question. In response to interrogatories submitted to it on June 25, 1959 in connection with the case at bar, the defendant stated that it has no right, title or interest in the patents which are the subject-matter of the suit other than a right to use them. Nor can an estoppel be predicated upon the two letters written by J. K. McCutchen on the stationery of the defendant-corporation, each of which was sent to a large number of textile manufacturers.

The first letter, dated either May 5 or May 6, 1959, stated:

"Dear Sir:

"Knowing that you are engaged in the manufacture of tufted items such as rugs, carpets, and the like, and that you undoubtedly use machines in your manufacturing operation, I want to call to your attention the two following U. S. patents issued to me on March 31, 1959, on my applications:

No. 2,879,728—Tufting Machine and Method;

No. 2,879,729—Method of an Apparatus for Producing Tufted Product Having Unsevered and Severed Loops.

"These patents cover what is known in the industry as the Loop and Cut pattern machine. For your convenience, I am enclosing copies of the patents.

"You will, I am sure, want to consider any machines which you have recently purchased or which you may have in mind purchasing, and any method which you are presently employing, or which you may contemplate employing, to see that you do not follow the teachings and claims of either of the patents involved, without, of course, adequate license with respect there [sic].

"Sincerely,

"J & C Bedspread Co., Inc.

"J. K. McCutchen"

The second letter, dated May 28, 1959, stated:

"Dear Sir:

"Since writing you May 5, I have information from a reliable source that your firm is operating a Cut and Loop Pattern Machine of Cobble Bros. make.

"My lawyers advise me that this machine is definitely an infringement on my patent numbered 2,879,-728.

"As I advised previously, I intend to exercise my rights under these patents and I would like to be advised immediately of your intentions in this matter.

"Yours truly,

"J & C Bedspread Co., Inc.

"J. K. McCutchen"

These letters cannot be read as an assertion by the corporation that it either

---

Dickson then granted sub-licenses to two of his three original sub-licensees.

The court found, *inter alia*, (1) that Dickson could not have sued upon the patent in his own name since he was only a licensee; (2) that Dickson, in writing, had asserted that he had Mr. Cocks' instructions that the patent was to be protected at any cost and that he plainly threatened suit against plaintiff's customers; (3) that Dickson meant the plaintiff to understand that he had such power and that he proposed to use it; (4) that Dickson was issuing licenses and taking royalties, which acts were a clear assertion of his purpose to insist on a monopoly; (5) that the Cocks company went further than merely to license Dickson—it permitted him to issue li-

censes under the patent and exacted a promise from him not to permit its interests to be prejudiced; and (6) that Dickson persisted in asserting the patent as licensee and, in that role, threatened plaintiff's customers.

Plaintiff's interest in settling its controversy with Dickson was weighed against the patentee's interests. On balance, the court held that it would be unfair to leave plaintiff's business exposed to continuous indirect attack merely to preserve the patentee's choice as to time and place of litigation.

The court pointed out that its opinion was in harmony with its holding in Contracting Division, A. C. Horn Corporation v. New York Life Insurance Co., supra.

owned or had any right to enforce the patents in suit. The rights asserted in the letters were clearly those of the patentee. The patent is referred to as "my patent," the lawyers are referred to as "my lawyers," and the rights are referred to as "my rights." The peculiar fact background of the Dickson case is not present here.

On this record, there is a question whether in fact a controversy exists between the parties-litigant. However, any controversy that may exist between the plaintiffs and the corporate-defendant is one between a bare licensee and an alleged infringer, and is not an actual controversy as required by the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202. See Contracting Division, A. C. Horn Corp. New York Life Insurance Co., supra.

Defendant has moved to dismiss for failure to join an indispensable party. Since the patentee is an indispensable party to this action, his absence requires a dismissal of the action. Accordingly, the motion is hereby granted. So ordered.

The Court's decision with regard to Motion No. 40, renders unnecessary any adjudication of Motion No. 83.