**SMITHKLINE CORPORATION,**
Plaintiff,

v.

**STERLING DRUG, INC., Defendant.**

**Civ. A. No. 74–266.**

United States District Court,
D. Delaware.

July 9, 1975.

Richard F. Corroon, of Potter, Anderson & Corroon, Wilmington, Del., of counsel; George J. Harding, 3rd, of Smith, Harding, Early & Follmer, Philadelphia, Pa., William S. Rawls, of Ballard, Spahr, Andrews & Ingersoll, Alan D. Lourie, Philadelphia, Pa., for plaintiff.

Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., of counsel; Thomas F. Reddy, Jr., Clyde C. Metzger, Robert J. Kadel, and Berj A. Terzian, of Pennie & Edmonds, New York City, for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

### FACTS

This dispute arises from defendant Sterling Drug, Inc.'s ("Sterling") motion to transfer this litigation, pursuant to 28 U.S.C. § 1404(a),[1] to the Eastern District of Pennsylvania. Before reaching the legal issues raised by plaintiff SmithKline Corporation's ("SmithKline") opposition to Sterling's motion, it is necessary to briefly describe the facts which spawned this and other related suits.

On December 1, 1960 Sterling filed a patent application (Serial No. 72,844) disclosing and claiming a broad group of generic benzomorphan compounds that included a compound known generically as pentazocine.[2] Because, on March 10, 1960, SmithKline had filed an application (Serial No. 13,982) which also disclosed and claimed certain benzomorphan compounds, the U. S. Patent Office on July 7, 1961 declared an Interference[3] (No. 91,896) involving the patent applications of the present parties.[4] Although TALWIN was not involved in the interference proceeding, the parties, on September 15, 1964, entered into an agreement whereby SmithKline transferred its rights to TALWIN in exchange for royalties based upon defendant's sales of the drug. Payment of royalties was to commence upon the Patent Office's determination of priority of invention and subsequent issuance of a patent.[5] On October 3, 1967 the Patent Office issued a patent (No. 3,345,373) covering TALWIN to SmithKline.[6] Thereafter, upon petition of Sterling, a second Interference was declared to determine priority of invention with respect to TALWIN.

During the pendency of the interference two separate suits were filed by Sterling in the U. S. District Court for the Eastern District of Pennsylvania. The first, Civil Action No. 70–1943, sought injunctive, declaratory and com-

---

1. 28 U.S.C. § 1404(a) provides:

   "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

2. Pentazocine will hereinafter be described by its trademark nomenclature of TALWIN.

3. Pursuant to 35 U.S.C. § 135 and 37 C.F.R. § 1.209.

4. A third-party was involved in the Interference but its participation has no relevance to the instant suit.

5. There is disagreement between the parties as to exactly when the payment of royalties was to commence, but that conflict is not material here.

6. Plaintiff SmithKline had filed a continuation-in-part application specifically claiming TALWIN on May 25, 1964.

pensatory relief with respect to the continued existence of the royalty agreement and the enforceability of Smith-Kline's patent. That suit, filed on July 15, 1970, was dismissed without prejudice pursuant to a Termination Agreement between the parties dated November 18, 1970, which *inter alia,* superceded the prior agreement of September 15, 1964. The second suit, Misc. Civil Action No. 70–302, filed on December 21, 1970, was an ancillary proceeding brought under 35 U.S.C. § 24 for the purpose of obtaining discovery in the interference proceeding.

On June 20, 1974 the Board of Patent Interference decided the priority of invention question adversely to SmithKline and adhered to this decision by refusing to reconsider it on September 27, 1974. Thereafter, SmithKline took an appeal under 35 U.S.C. § 141[7] contesting the Board's decision. On November 14, 1974, Sterling, pursuant to 35 U.S.C. § 141 elected to proceed in a district court civil action under 35 U.S.C. § 146.[8] On the same day, Sterling brought suit in the United States District Court for the Eastern District of Pennsylvania seeking a declaration of the invalidity and unenforceability of SmithKline's earlier-issued patent, the return of payments previously made under the royalty agreement and the recission and reformation of the earlier agreements. That suit, Civil Action No. 74–2957, was assigned to the same judge who adjudicated Misc. Civil Action No. 70–302.[9] Thereafter, on December 10, 1974, SmithKline filed the instant action in this Court pursuant to 35 U.S.C. § 146 to appeal the Board's adverse finding on the priority of invention issue.

Plaintiff SmithKline's principal grounds of opposition to Sterling's motion to transfer this suit to the Eastern District of Pennsylvania are as follows: (1) transfer is unwarranted in that it would not serve the "interests of justice"; (2) such transfer is barred by 35 U.S.C. §§ 141 and 146 because a transfer of this litigation would abrogate plaintiff's exclusive right to designate a forum of its choice under 35 U.S.C. § 146.

## LEGAL ISSUES

### A. *Is Transfer Warranted?*

■ At the outset, it is clear that the moving party on a motion to transfer under section 1404(a) bears the burden of proving that any such transfer will be in the best interest of justice. *Kaiser Industries Corporation v. Wheeling-Pittsburgh Steel Corporation,* 328 F.Supp. 365, 368 (D.Del.1971). This is because a plaintiff's choice of forum is entitled to substantial weight and is thus "a paramount consideration in any determination of a transfer request . . ." *Shutte v. Armco Steel Corporation,* 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). *But see A. Olinick & Sons v. Dempster Bros., Inc.,* 365 F.2d 439, 444–45 (2d Cir. 1966); *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.,* 267 F.Supp. 938, 942, n. 9 (S.D.N.Y.1967). *Cf. Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). Since a plaintiff's forum choice is accorded such deference this Court has stated that " . . . transfer should be denied where the factors to be considered are evenly balanced or only slightly fa-

---

**7.** 35 U.S.C. § 141 provides, in part:

" . . . A party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority may appeal to the United States Court of Customs and Patent Appeals, but such appeal shall be dismissed if any adverse party to such interference . . . elects to have all further proceedings conducted as provided in section 146 of this title. Thereupon the appellant shall have thirty days . . . within which to file a civil action under section 146 . . . ."

**8.** 35 U.S.C. § 146 authorizes a civil action filed in an appropriate federal district court as an alternative to an appeal to the Court of Customs and Patent Appeals by the dissatisfied party.

**9.** SmithKline filed a motion to dismiss or alternatively to stay the Philadelphia proceeding on February 7, 1975. Sterling filed a cross-motion seeking a stay of proceedings on SmithKline's motion on February 26, 1975.

vor a transfer . . . ." *Scovill Manufacturing Co. v. Sunbeam Corporation,* 357 F.Supp. 943, 946 (D.Del.1973) *citing Aetna Casualty & Surety Co. v. Singer-General Precision, Inc.,* 323 F.Supp. 1141, 1143 (D.Del.1971).

■ The initial requirement for transfer to another forum is that the putative transferee court be a district "where it might have been brought." 28 U.S.C. § 1404(a). *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). *See generally* 1 *Moore's Federal Practice* ¶ .145[6.–1]. There is no doubt that in the present case the Eastern District of Pennsylvania is a district where this suit "might have been brought." The defendant here, Sterling, is a Delaware corporation qualified to do business, and maintaining substantial facilities, in Pennsylvania. Thus, the venue requirements of 28 U.S.C. § 1391(c) are clearly satisfied with respect to the suggested transferee district.[10]

Section 1404(a) delineates three criteria to be used in determining the merits of a transfer motion: the convenience of parties, the convenience of witnesses and "the interest of justice." The parties before the Court do not seriously dispute that the convenience of parties and witnesses would be served by transfer of the instant litigation to the Eastern District of Pennsylvania.[11] Thus, the sole question before the Court is whether the requested transfer will be "in the interest of justice."

■ One of the prime components of the "interest of justice" is the maintenance of sound judicial administration. *General Tire & Rubber Co. v. Watkins,* 373 F.2d 361 (4th Cir. 1967), *cert. denied, Firestone Tire and Rubber Co. v. General Tire & Rubber Co.,* 386 U.S. 960, 87

S.Ct. 1031, 18 L.Ed.2d 109 (1967); *Medtronic, Inc. v. American Optical Corp.,* 337 F.Supp. 490, 495–97 (D.Minn.1971); *Jacobs v. Tenney,* 316 F.Supp. 151, 169 (D.Del.1971); *Jahncke Service, Incorporated v. OKC Corp.,* 301 F.Supp. 866, 869 (D.Del.1970). Cf. *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952). Central to efficient and effective judicial administration is a policy, implied in section 1404(a), of proper conservation and utilization of judicial resources. *See Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1959).

■ The issues raised in the instant suit will be involved in the Philadelphia litigation. Moreover, the factual issues will be virtually identical in both actions although a broader range of relief is sought in the suit pending in the Eastern District of Pennsylvania. As the Supreme Court stated: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain, supra* at 26, 80 S.Ct. at 1474. *See, e. g., General Tire & Rubber Co. v. Watkins, supra* at 368. Given the strong policy favoring the litigation of related claims before the same tribunal, *Schneider v. Sears,* 265 F.Supp. 257, 266–67 (S.D.N.Y.1967), it is difficult, if not impossible, to justify the continued maintenance of both the Delaware and Philadelphia actions in the instant controversy.

Transfer of this action to the Eastern District of Pennsylvania, where it presumably will be assigned to the same Judge currently trying Civil Action No.

10. 28 U.S.C. § 1391(c) provides that a corporation may be sued in any district where it is incorporated, licensed or doing business. No question has been raised regarding the applicability of section 1391 to a section 146 action. *Standard Oil v. Montecatini Edison S.p.A.,* 342 F.Supp. 125 (D.Del.1972).

11. Plaintiff's principal contention with respect to the convenience of parties and witnesses is that those factors should be deemed irrelevant on a motion to transfer a suit from the District of Delaware to the Eastern District of Pennsylvania. Plaintiff's Brief at 15.

74–2957,[12] will result in the following benefits: (1) pre-trial discovery can be conducted more efficiently; (2) the witnesses can be saved the time and expense of appearing in more than one tribunal; (3) duplicative litigation can be avoided, thereby eliminating unnecessary expense to the parties; and (4) inconsistent results can be avoided. *Schneider v. Sears, supra* at 266–67; *Medtronic, Inc. v. American Optical Corporation, supra* at 496; *Firmani v. Clarke,* 325 F.Supp. 689, 693 (D.Del.1971); *Jacobs v. Tenney, supra* at 169; *Jahncke Service, supra* at 866. Further, the extreme factual complexity of the underlying issues in this patent case implicates an additional reason articulated in *Medtronic, Inc. v. American Optical Corporation, supra,* to justify transfer of this case, namely that "only one judge need be 'educated' with regard to the intricacies of the patents involved . . . ." 337 F.Supp. at 497. In addition, the Eastern District of Pennsylvania's current familiarity with the issues of fact and law in this case[13] stands as a further and distinct justification in a patent case for granting defendant's motion to transfer. *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., supra.*

### *Is 35 U.S.C. § 146 a Bar to Transfer Under 28 U.S.C. § 1404(a)?*

Plaintiff's opposition to defendant's transfer motion is largely premised on its argument that 35 U.S.C. § 146 bars transfer of this action because, they argue, transfer would destroy plaintiff SmithKline's exclusive right under section 146 to designate a forum where their appeal from the adverse decision of the Board of Patent Interferences may be heard. The Court finds this argument to be totally lacking in merit.

▆▆▆ First, 28 U.S.C. § 1404(a) expressly applies to "any civil action." *See generally* 1 *Moore's Federal Practice*

¶.145[4.–1]. Further, there is no question that the drafters of section 1404(a) intended it "to be generally applicable to all civil actions, whether governed by general or special venue provisions, and whether the special venue provisions were contained in Title 28 or in other titles of the United States Code." *Id.* at 1593. *Compare Baltimore & Ohio R. Co. v. Kepner,* 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941) *with Ex Parte Collett,* 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949). *See Kilpatrick v. Texas & Pacific Ry. Co.,* 337 U.S. 75, 69 S.Ct. 953, 93 L.Ed. 1223 (1949); *U. S. v. National City Lines, Inc.,* 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226 (1949). *See also Kaiser Industries Corporation v. Wheeling-Pittsburgh Steel Corporation, supra,* at 368. Thus, while an adverse party to a patent interference has the right pursuant to 35 U.S.C. § 146 to designate the forum of its choice for its appeal of the Board's ruling, that choice of forum must still be measured by the standards of section 1404(a) should it appear that plaintiff's choice is inappropriate on grounds of convenience to parties and witnesses or in the "interests of justice."

Secondly, an argument similar to SmithKline's was made and rejected in *Ex Parte Collett, supra.* There, the petitioner argued that the district court's transfer of its FELA action pursuant to section 1404(a) destroyed its exclusive right under section 6 of the Federal Employers' Liability Act to sue in any district "in which the defendant shall be doing business." 337 U.S. at 59–60, 69 S.Ct. at 947. In rejecting this argument, the Supreme Court stated: "Section 6 of the Liability Act defines the proper forum; § 1404(a) of the Code deals with the right to transfer an action properly brought. The two sections deal with two separate and distinct problems." *Id.* The Supreme Court's reasoning in *Ex Parte Collett* is clearly applicable to the

---

12. Pursuant to the Local Rules of the Eastern District of Pennsylvania.

13. That Court conducted two pre-trial conferences with the parties in Civil Action No. 74–2957 and scheduled a trial date of September 8, 1975.

instant controversy as there is nothing to suggest that an FELA plaintiff's forum designation rights are any less deserving of special protection than the right of a losing party in a patent interference to choose a forum under 35 U.S.C. § 146. In fact, prior to the adoption of section 1404(a) as part of the Judicial Code of 1948 there was express authority declaring principles of *forum non conveniens* irrelevant to an FELA action. *Baltimore & Ohio R. Co. v. Kepner, supra; Miles v. Illinois Central R. Co.*, 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129 (1942).

Plaintiff relies heavily upon *Stamicarbon, M.V. v. Chemical Construction Corp.*, 355 F.Supp. 228 (D.Del.1973). In that case, Chief Judge Latchum refused to grant declaratory relief on the issue of a patent's validity to the winning party in a patent interference when the petition for relief had been filed prior to the filing of an appeal by the losing party pursuant to 35 U.S.C. § 146. *Stamicarbon* is clearly distinguishable for at least two reasons. First, it involved not the application of section 1404(a)'s standards to a motion to transfer but instead involved an exercise of equitable discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201. Secondly, while the granting of declaratory relief in *Stamicarbon* would indeed have precluded the losing party before the Board from exercising its forum designation rights under 35 U.S.C. § 146, the issue here is not whether plaintiff SmithKline can exercise its choice of forum, but rather, having exercised it, can it avoid a motion to transfer in the face of a more convenient forum that will serve the interest of justice. *See Ex Parte Collett, supra* 337 U.S. at 60, 69 S.Ct. 944.

The Court will grant defendant Sterling's motion to transfer this case to the Eastern District of Pennsylvania.

Submit Order within ten days on notice.