**ERBAMONT INC., Plaintiff,**

v.

**CETUS CORPORATION and Cetus Generic Corporation, Defendants.**

**Civ. A. No. 89–176–CMW.**

United States District Court, D. Delaware.

Aug. 23, 1989.

---

Robert H. Richards, III of Richards, Layton & Finger, Wilmington, Del., for plaintiff; Garland P. Andrews, David L. Hitchcock, Eugenia S. Hansen and Stuart L. Watt of Richards, Harris, Medlock & Andrews, Dallas, Tex., of counsel.

Donald F. Parsons, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants; Robert L. Baechtold and Hugh C. Barrett of Fitzpatrick, Cella, Harper & Scinto, New York City, of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This is an action for patent infringement, or in the alternative for a declaratory judgment of patent infringement. Plaintiff Erbamont Inc. ("Erbamont") filed suit on April 12, 1989, against defendants Cetus Corporation ("Cetus") and Cetus Generic Corporation ("Cetus Generic"). The litigation involves U.S. Patent No. 3,803,124 ("'124 patent"), a process patent for the production of doxorubicin, a leading anti-cancer chemotherapy agent.

On April 17, 1989, defendants moved to dismiss the complaint, or alternatively to transfer this action to the Northern District of California, where there is pending another suit involving the '124 patent. Defendants' chief argument for dismissal is that this action lacks certain indispensable parties, namely the '124 patent owner, Farmitalia Carlo Erba S.r.l. ("Farmitalia"), and its parent corporation, Erbamont N.V. ("Erbamont N.V."). This Opinion constitutes the Court's decision on defendants' motion.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1338(a) and 2201. For the

reasons stated herein, defendants' motion is denied.

## I. BACKGROUND

### A. *Plaintiff and Related Entities*

Plaintiff Erbamont, a Minnesota corporation with its principal place of business in Stamford, Connecticut, distributes doxorubicin in the United States under the trademark Adriamycin through its Adria Laboratories division ("Adria").[1] Erbamont holds the exclusive license to make, have made, import, use and sell doxorubicin made by the patented processes as disclosed in the '124 patent in the United States. Under its license agreement with the patent owner, Erbamont has the right to enforce the '124 patent in its own name in the United States.[2]

Farmitalia, an Italian corporation with its corporate headquarters in Milan, Italy, holds title to the '124 patent. It is a wholly owned subsidiary of Erbamont N.V.[3] Farmitalia produces bulk doxorubicin in Italy pursuant to the processes protected by the '124 patent. The patent that covered doxorubicin as a product expired in June 1988. The '124 patent is to expire in April 1991.

### B. *Defendants and Related Entities*

Defendants Cetus and its wholly owned subsidiary, Cetus Generic, are both Delaware corporations that have their principal places of business in Emeryville, California. Cetus is a co-partner of a California general partnership, Cetus–Ben Venue Therapeutics ("CBVT"), which has received approval from the Food and Drug Administration ("FDA") to market doxorubicin and has begun importing that drug for the production of dosage forms. CBVT has its principal offices in California. The other co-part-

ner in CBVT is Ben Venue Laboratories, Inc. ("Ben Venue"), a Pennsylvania corporation with its principal place of business in Bedford, Ohio. Ben Venue operates through its wholly owned subsidiary, Ben Venue Generic Corporation ("Ben Venue Generic"), an Ohio corporation.

CBVT imported a quantity of bulk doxorubicin into San Francisco on April 11, 1989. CBVT was the consignee of that shipment and holds legal title to the bulk material. Ben Venue has the responsibility for finishing the bulk doxorubicin to produce dosage forms, while Cetus is the marketing agent for the doxorubicin dosage forms. As of the filing date of the complaint in this action, no doxorubicin dosage forms had been produced.

### C. *Related Litigation*

#### 1. *Delaware*

Bristol–Myers Company ("Bristol"), a Delaware corporation with its principal place of business in New York City, has also imported into the United States bulk doxorubicin that Erbamont believes is made by the '124 process.[4] On March 3, 1989, Bristol filed a declaratory judgment action in this Court against Erbamont, Farmitalia and Erbamont N.V., seeking a declaratory judgment that (1) the '124 patent is invalid, void and unenforceable, and (2) the '124 patent is not infringed by Bristol's importation, use and/or sale of doxorubicin. On April 12, 1989, Erbamont filed its answer and counterclaimed against Bristol for infringement of the '124 patent.

Bristol filed a motion for summary judgment of non-infringement on May 5, 1989. Defendants Erbamont N.V. and Farmitalia filed a motion to dismiss for lack of personal jurisdiction on May 15, 1989. Those

---

1. The doxorubicin is used in the form of its hydrochloride salt, doxorubicin hydrochloride, in the chemotherapeutic treatment of cancer.

2. For more information regarding the license agreement between Erbamont and Farmitalia, see *infra,* notes 15 and 18.

3. Erbamont N.V. is a Netherlands Antilles corporation with its principal offices in Stamford, Connecticut. Erbamont is also a subsidiary of

Erbamont N.V. Montedison S.p.A. ("Montedison"), an Italian corporation with its executive offices in Milan, Italy, owns *seventy-two percent* of the stock of Erbamont N.V.

4. The Court uses the word "imported" here in its most general sense. Its use is *not* a finding by the Court as to importation by Bristol, because the construction of that term as used in 35 U.S.C. § 271(g) is an issue in the Bristol case.

motions were pending as of the date of the writing of this Opinion.[5]

## 2. *California*

On April 11, 1989, Cetus, Ben Venue and CBVT filed an action in the Northern District of California against Erbamont, Erbamont N.V., Farmitalia and Montedison seeking a declaration that the '124 patent is invalid and unenforceable, based upon the alleged withholding of pertinent prior art from the patent examiner.[6] Additionally, the California complaint seeks relief for alleged acts of unfair competition in violation of California state law and common law, and violations of the antitrust laws. The complaint further alleges, *inter alia,* that Farmitalia, Erbamont and Erbamont N.V., acting together and coordinated by Montedison, have used and are continuing to use the remaining process patent to extend unlawfully their monopoly over the now-unpatented product, doxorubicin, knowing that the process patent was invalid and unenforceable, and that it was obtained by making misrepresentations to the patent examiner.

Erbamont served a counterclaim in the California action on May 3, 1989, alleging infringement of the '124 patent by all of the California plaintiffs.

On May 8, 1989, Erbamont filed a motion to transfer venue to this district. On the same day, defendants Montedison, Erbamont N.V. and Farmitalia moved to dismiss for lack of personal jurisdiction. Also on the same date, Erbamont N.V. filed a motion to quash service of summons. Those three motions were pending as of the date of the writing of this Opinion.

**5.** By Stipulation and Order of August 22, 1989, the motion to dismiss by Erbamont N.V. and Farmitalia was withdrawn and those defendants were dismissed from the lawsuit. Farmitalia pledged to cooperate in discovery and to comply with all rulings and orders as if it were a party.

**6.** Erbamont states that it filed its Delaware action against Cetus and Cetus Generic prior to receiving service of the complaint in the California action.

**7.** The Declaratory Judgment Act states in pertinent part:

## 3. *International Trade Commission*

On May 12, 1989, Erbamont filed a complaint with the International Trade Commission ("ITC") pursuant to 19 U.S.C. § 1337, seeking relief from alleged infringement of the '124 patent by Bristol, Cetus, their related companies and their foreign suppliers. Specifically, the ITC complaint seeks relief from the allegedly infringing importation and sale of doxorubicin made according to the processes claimed in the '124 patent.

## II. ANALYSIS

### A. *Justiciable Controversy*

Defendants first argue that, because they have not themselves infringed the '124 patent, this action is purely for declaratory relief, and that the Court may therefore in its discretion decline jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.[7] Erbamont responds, of course, by arguing that it has properly stated a cause of action against Cetus and Cetus Generic for patent infringement or inducement of the partnership to infringe, as well as an alternative request for declaratory relief.

Defendants contend that, as of the date of Erbamont's complaint in this action,[8] neither Cetus nor Cetus Generic committed any act that could constitute patent infringement. They base this assertion on the fact that Cetus Generic allegedly did no acts at all with respect to the importing of doxorubicin by CBVT, and that Cetus is merely the marketing agent of the dosage forms, which did not exist as of the date of the complaint. Erbamont charges that the importation of doxorubicin made according to the processes claimed in the '124 patent

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).

**8.** The jurisdictional sufficiency of the complaint is tested by reference to the facts extant when it is filed. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 734 n. 2 & 736 (Fed. Cir.1988); *Jervis B. Webb Co. v. Southern Systems, Inc.,* 742 F.2d 1388, 1398 (Fed.Cir.1984).

constitutes infringement of the patent.[9] While it admits that CBVT may have been the entity that did the actual importing, Erbamont argues that Cetus, as a co-partner of CBVT, is jointly and severally liable for any direct infringement by CBVT, or that Cetus is at least liable for inducing the partnership to infringe.[10]

■ The general rule on a motion to dismiss for lack of subject matter jurisdiction is that the Court accept as true all well-pleaded factual allegations in the complaint. *Millipore Corp. v. University Patents, Inc.*, 682 F.Supp. 227, 231 (D.Del. 1987). However, it is plaintiff's burden to show that the Court does have subject matter jurisdiction. *Id.*

■ Plaintiff has carried this burden here. There is some doubt whether the Court has jurisdiction over Erbamont's infringement claims against Cetus and Cetus Generic based upon Erbamont's theories of joint and several liability of partners or inducement.[11] Nevertheless, the Court finds that there at least exists an actual controversy under the Declaratory Judgment Act sufficient to establish jurisdiction.

Under the Declaratory Judgment Act, it is essential that "a case of actual controversy within its jurisdiction" exists before a court can proceed. 28 U.S.C. § 2201;

*Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir.1979). The statute itself does not provide a basis for jurisdiction; rather, jurisdiction must be created independently of the statute. *Id.* There is no precise test for determining whether such jurisdiction exists. *Akzona Inc. v. E.I. duPont de Nemours & Co.*, 662 F.Supp. 603, 609 (D.Del.1987). Instead, the court must determine whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *see also C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880 (Fed.Cir.1983).

In the standard declaratory judgment action involving a patent, a person charged with patent infringement files suit against the patent owner for a declaratory judgment of noninfringement and/or invalidity. The Act thus allows a potential defendant in an infringement suit to take the initiative and file suit. *See generally* 5 D. Chisum, *Patents* § 21.02[1], at 21–23 (1988) [hereinafter *"Chisum"*]. In this action, however, the Court is presented with the much rarer situation of an exclusive patent licensee suing a potential (or actual) infringer. In other words, the usual align-

---

**9.** Erbamont bases this charge on the Process Patent Amendments Act of 1988, included in the Omnibus Trade and Competitiveness Act of 1988, which provides in pertinent part:

> Whoever without authority imports into the United States or sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, sale, or use of the product occurs during the term of such process patent.

35 U.S.C. § 271(g) (effective February 23, 1989).

**10.** "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

**11.** Defendants suggest that, although a partner may be responsible for the liability of the partnership, liability must *first* be established against the partnership. That cannot be accomplished here, defendants assert, because CBVT, the California general partnership, is not a party to this action. As to Erbamont's theory that

defendants induced CBVT to import doxorubicin, defendants argue that the only inducement pleaded in the complaint is that defendants induced others to *sell* the drug.

In a suit for infringement of the '124 patent, an act of infringement is, of course, one of the elements that Erbamont must establish on the merits in order to recover. However, a plaintiff need not prove infringement on the merits in order to establish venue. It is enough that the accused act, if proved, would constitute patent infringement. *See* 5 D. Chisum, *Patents* § 21.02[2], at 21–74 (1988). In other words, the jurisdictional inquiry is less strict than the ultimate inquiry on the merits. *Kaz Mfg. Co. v. Chesebrough-Ponds, Inc.*, 317 F.2d 679, 681 (2d Cir.1963).

Whatever the ultimate resolution of the infringement issues, there is at least a reasonable possibility that, based upon the close relationship of CBVT, Cetus, Cetus Generic, Ben Venue and Ben Venue Generic, defendants Cetus and Cetus Generic could be liable for the allegedly infringing importation of doxorubicin by CBVT.

ment of the parties is reversed. While some decisions assume that a patent owner (or party asserting rights under the patent, such as an exclusive licensee) may not file suit for patent infringement as such until the defendant has actually committed an act of infringement, *see, e.g., Lang v. Pacific Marine and Supply Co.*, 703 F.Supp. 1404, 1406–09 (D.Hawaii 1989), the better view is that the patent owner may, in certain circumstances, seek a declaratory judgment as to infringement. *See Chisum* § 21.02[1], at 21–46.2–48.[12]

The Court therefore finds that, regardless of whether there was actual pre-complaint infringement attributable to defendants, this suit presents an actual controversy sufficient to confer jurisdiction under the Declaratory Judgment Act. CBVT, a partner of Cetus, has imported a quantity of doxorubicin that Erbamont believes was manufactured in violation its rights under the '124 patent. Cetus, through its subsidiary Cetus Generic, intends to market the finished doxorubicin dosage forms, which are to be prepared by Ben Venue. Cetus, along with Ben Venue, has already prepared price lists and solicited orders. This ability and intent to immediately accomplish the allegedly infringing acts creates a sufficient controversy.[13] *See Westnofa USA, Inc. v. British Design (U.S.A.) Corp.*, 222 U.S.P.Q. 136, 138 (N.D.Ill.1983).

Even when a justiciable controversy has been shown to exist, jurisdiction under the Declaratory Judgment Act remains discretionary. *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 n. 7 (Fed.Cir.1987); *Akzona*, 662 F.Supp. at 617. The Act is an authorization for jurisdiction, not a command. *Public Affairs*

*Press v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962). "If the Court is of the opinion that the action will not serve a useful purpose, or that it is otherwise undesirable, then it should refuse to proceed." *Akzona*, 662 F.Supp. at 617 (quoting 6A J. Moore, *Moore's Federal Practice* ¶ 57.20 (2d ed. 1979)). Two criteria are generally used in determining whether a court should exercise its discretion to issue a declaratory judgment: (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) whether the judgment will terminate and afford relief from uncertainty, insecurity and controversy giving rise to the proceeding. *Akzona*, 662 F.Supp. at 617; *C. Van Der Lely N.V. v. F.Lli Maschio S.n.c.*, 561 F.Supp. 16, 25 (S.D. Ohio 1982), *aff'd*, 748 F.2d 1568 (Fed. Cir.1984).

Applying that rather nebulous standard to the facts at hand, the Court finds that it is in the interests of justice to proceed with this action. Because of the critical importance of doxorubicin in cancer treatment and the expiration of patents in connection with the drug, there is already a welter of litigation surrounding the '124 patent. A judgment clarifying the validity and enforceability of the '124 patent will certainly serve a useful purpose and will afford some relief from uncertainty surrounding the patent.

**B.** *Indispensable Parties*

■ Defendants secondly contend that Farmitalia and Erbamont N.V. are necessary parties to this suit, pursuant to Fed.R. Civ.P. 19,[14] and that, because the Court

---

**12.** Professor Chisum cites *Proler Steel Corp. v. Luria Bros. & Co.*, 223 F.Supp. 87 (S.D.Tex. 1963), and its progeny in recognizing the availability of the declaratory judgment remedy to a patent owner. *Chisum* § 21.02[1], at 21–47 (citing *Westnofa USA, Inc. v. British Design (U.S.A.) Corp.*, 222 U.S.P.Q. 136 (N.D.Ill.1983); *Andco Environmental Processes v. Niagra Environmental Associates, Inc.*, 211 U.S.P.Q. 459 (W.D.N.Y. 1980); *Automation Sys., Inc. v. Intel Corp.*, 501 F.Supp. 345 (S.D. Iowa 1980); *Shell Oil Co. v. Aeroseal Corp.*, 162 U.S.P.Q. 495 (M.D.Pa.1969); *Struthers Scientific Corp. v. General Foods Corp.*, 290 F.Supp. 122 (S.D.Tex.1968)).

**13.** The jurisdictional predicate under the Declaratory Judgment Act is not the past importation of doxorubicin by CBVT, but is the imminent use and sale of the drug, made according to the patented process, by defendants in alleged violation of 28 U.S.C. § 271(g).

**14.** Rule 19 provides in pertinent part:
(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action (1) if in his absence complete relief cannot be

cannot make these entities part of this action, the suit should be dismissed. Rule 19(a) identifies necessary parties. If a party is deemed necessary under Rule 19(a), but cannot be joined because it is not subject to process, then the court must consider, upon application of Rule 19(b), whether the party is indispensable and dismissal is appropriate. *Field v. Volkswagenwerk AG*, 626 F.2d 293, 300 (3d Cir.1980); *Suprex Corp. v. Lee Scientific, Inc.*, 660 F.Supp. 89, 93 (W.D.Pa.1987). The choice between dismissal and continuation turns on a balancing of the interests of the plaintiff, defendants and the patent owner. *Chisum* § 21.03[3], at 21–168.

The Court finds that Farmitalia and Erbamont N.V. are necessary parties under Rule 19(a). A patent owner should be viewed as a necessary party if it retains "any interest" in the patent. *Chisum* § 21.03[3], at 21–167; *contra Procter & Gamble v. Kimberly–Clark Corp.*, 684 F.Supp. 1403, 3 U.S.P.Q.2d 1872, 1874–76 (N.D.Tex.1987). Both Farmitalia and Erbamont N.V. have an interest in the validity of the '124 patent. Farmitalia retains title to the patent, and, pursuant to its licensing agreement with Erbamont, has a right to bring an infringement action in its own name in the event Erbamont decides not to bring its own suit.[15] Erbamont N.V., in correspondence from its chief executive officer to Cetus, alleged that CBVT's doxoru-bicin supplier, SICOR, was using a process "that would infringe our proess patent ['124]" by "production by our process". The Erbamont N.V. officer further advised that "We do ... intend to aggressively defend our intellectual property rights...." Moreover, several representatives of Erbamont N.V. visited the offices of defendants in California and asserted their allegations of potential patent infringement. Hence, the possibility exists that a judgment here might impede the interests of both Farmitalia and Erbamont N.V.

In reaching this determination, the Court declines to definitively label the agreement between Farmitalia and Erbamont as a license or an assignment.[16] Traditionally, when the interest transferred is deemed a license, the patent-holder is a necessary party because the patent-holder is still the real party in interest with respect to the validity of the patent. *Dentsply Intern., Inc. v. Centrix, Inc.*, 553 F.Supp. 289, 294 (D.Del.1982) (citing *Sweetwater Rug Corp. v. J & C Bedspread Co.*, 198 F.Supp. 941, 943–44 (S.D.N.Y.1961)). In those instances where the transferred interest is deemed to be an assignment, the courts have generally held that the patent-holder is not a necessary party to the action. *Id.* (citing *Waterman v. MacKenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891)). However, as this Court noted in *Dentsply*, many

accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest....

    **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
Fed.R.Civ.P. 19.

**15.** Under the license agreement, made July 1, 1988, the party bringing the infringement suit is entitled to keep any proceeds recovered in the action.

**16.** The fact that the agreement between Farmitalia and Erbamont is labeled on its face a "License Agreement" is not dispositive. Also, the Court's use of the terms "licensee" and "licensor" in this Opinion should not be read to mean that the agreement is necessarily a license.

cases fall in the middle of these two extremes. 553 F.Supp. at 294. *See generally* Heines, *Indispensable Parties in Patent Litigation,* 58 J.Pat.Off.Soc'y. 232 (1976).

■ Because Farmitalia and Erbamont N.V. are necessary parties, the Court must consider whether the action can proceed in their absence.[17] *Suprex,* 660 F.Supp. at 93; *Dentsply,* 553 F.Supp. at 293; *Catanzaro v. International Tel. & Tel. Corp.,* 378 F.Supp. 203, 205 (D.Del.1974). Under Rule 19(b), the first factor to be considered is to what extent a judgment rendered in the absence of Farmitalia and Erbamont N.V. might be prejudicial to them or to the parties—Erbamont, Cetus and Cetus Generic. The Court fails to see how a judgment here could be prejudicial to Farmitalia, Erbamont N.V. or Erbamont. The three companies are related corporations that are cooperating with one another in Erbamont's lawsuit.[18] Farmitalia can hardly be said to suffer prejudice from a judgment of invalidity in its absence when it has entrusted its licensee, Erbamont, with the right to protect its interests by suing for infringement. *See Messerschmitt–Boelkow–Blohm GmbH v. Hughes Aircraft Co.,* 483 F.Supp. 49, 52 (S.D.N.Y.1979). Nor would Erbamont N.V., the parent corporation of Erbamont and Farmitalia, be prejudiced by such a judgment. If either company thought it would be prejudiced, it could voluntarily join this action.

The question of possible prejudice to defendants, however, is more serious. The focus of the potential prejudice here is the possibility that Farmitalia and Erbamont N.V., not being bound by a judgment in this action, might relitigate issues as to the '124 patent at a later date, and that such relitigation would be prejudicial to defendants. *See Tycom Corp. v. Redactron Corp.,* 380 F.Supp. 1183, 1188 (D.Del. 1974). The extent to which Farmitalia and Erbamont N.V. will be precluded from relitigating issues decided in this case turns on application of the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion).[19] A person in privity with a party to a judgment is treated, for purposes of these doctrines limiting relitigation, as if he were a party, on the ground that his rights were before the court, though his name did not appear in the pleadings. 1B J. Moore, J.D. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.441[3.—1], at 731 (2d ed. 1988). The question arises therefore whether Farmitalia and/or Erbamont N.V. are in privity with Erbamont and thereby would be estopped from relitigating the patent issues of this action. *See Dentsply,* 553 F.Supp at 294; *Tycom,* 380 F.Supp. at 1189.

Privity, like many legal concepts, is easy to define but difficult to identify on particular facts. Most simply, it is "[m]utal or successive relationship to the same rights of property." *Black's Law Dictionary* 1079 (5th ed. 1979); *see generally* 1B J. Moore, J.D. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.411[12], at 482–501 (2d ed. 1988). There is a strong possibility

---

**17.** No showing has been made to this Court that Farmitalia or Erbamont N.V. are subject to service of process of the Court.

**18.** Pursuant to the license agreement, Farmitalia is bound to cooperate with Erbamont in order to prosecute an infringement action, and Erbamont is to reimburse Farmitalia for reasonable expenses so incurred. The license granted Erbamont is exclusive to Erbamont and irrevocable by Farmitalia. Erbamont reserved in the license agreement the right to terminate the agreement at any time upon thirty days notice.

**19.** Under the traditional doctrine of res judicata (claim preclusion), a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. 1B J. Moore, J.D. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[1], at

178 n. 1 (2d ed.1988). The related doctrine of collateral estoppel (issue preclusion) makes a determination of any issue actually contested between the parties and decided in a way necessary to the judgment conclusive between the parties and their privies in subsequent litigation between them on a different claim or cause of action. *Id.* ¶ 0.412, at 502. Unlike res judicata, collateral estoppel may be asserted by a stranger to the prior litigation, but (like res judicata) only against parties to the earlier proceeding and their privies. *See id.* ¶ 0.441[3.—2], at 731–36; *see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

that both the Erbamont–Farmitalia and Erbamont–Erbamont N.V. relationships fall within this definition because both Farmitalia, by its license agreement, and Erbamont N.V., by its representations to defendants, claim a concurrent interest in the '124 patent. The Court concludes that there is a strong probability that Cetus and Cetus Generic could successfully assert the doctrines of collateral estoppel (issue preclusion) or res judicata (claim preclusion) as a defense to any subsequent attempt by Farmitalia or Erbamont N.V. to relitigate the issues here.

The second factor to be considered under Rule 19(b) is to what extent any prejudice caused by the absence of Farmitalia and Erbamont N.V. can be lessened or avoided. Farmitalia, Erbamont N.V. and Montedison each have volunteered to submit affidavits to the Court stating under oath that they will be bound by any judgment rendered in this action, and that they will not subject Cetus or Cetus Generic to future duplicative litigation as to the validity, enforceability and infringement of the '124 patent. Also, to lessen any prejudice to Cetus by not being able to obtain discovery from Farmitalia, Farmitalia will agree to cooperate with Erbamont in responding to discovery requests relevant to the validity and enforceability of the '124 patent.

While the effectiveness of such affidavits has not been judicially resolved, there is precedent for the submission of affidavits under similar circumstances. *See Catanzaro*, 378 F.Supp. at 206–07; *Tycom*, 380 F.Supp. at 1190. There are indeed questions as to the enforceability of such affidavits. *See Catanzaro*, 378 F.Supp. at 207 (affidavit *may* be held to preclude further litigation on part of absent party who is patentee and who holds remaining undivided half interest in patent in suit). Regardless, they are at least evidence that goes to minimize any prejudice from a judgment in this action.

The third factor is whether a judgment rendered in the absence of Farmitalia and Erbamont N.V. will be adequate. The Supreme Court reads this factor as pertaining to the interest of the courts and the public

in complete, consistent and efficient settlement of controversies. *Tycom*, 380 F.Supp. at 1190 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)). As explained more fully below in the section regarding transfer, resolution of the Bristol–Erbamont and Erbamont–Cetus disputes in the same judicial forum would serve judicial economy and lessen the possibility of inconsistent judgments regarding the '124 patent. Admittedly, if this Court retains the Erbamont–Cetus action and the California court proceeds with the Cetus–Erbamont litigation, there is the possibility of inconsistent judgments. However, the potential for inconsistent judgments exists even if this Court orders dismissal or transfer, because the Court retains jurisdiction of the Bristol–Erbamont litigation, at least until resolution of the pending motions in that case. Application of the third 19(b) factor to this case requires that the Court choose the option that results in the most complete, consistent and efficient resolution. Given the presence of the earlier-filed Bristol–Erbamont dispute, this factor does not favor dismissal or transfer.

The fourth factor is whether Erbamont will have an adequate remedy if the patent infringement claims are dismissed for nonjoinder of Farmitalia and Erbamont N.V. This factor does not weigh in Erbamont's favor. The California action includes the Cetus entities as well as Erbamont and its related companies. Erbamont has counterclaimed in that action for patent infringement against all of the California plaintiffs. Thus, the Court finds that, even if the present infringement claims are dismissed for non-joinder of Farmitalia and Erbamont N.V., Erbamont will have an adequate remedy to pursue its charges of infringement.

Upon application of the above 19(b) analysis to the rather complicated facts at hand, the Court determines that Farmitalia and Erbamont N.V. are not indispensable parties whose absence mandates dismissal of this action. Assuming the appropriate affidavits are submitted, the action can proceed without Farmitalia and Erbamont

N.V., and without danger of prejudice to defendants and their related companies.

### C. *Transfer*

■ Alternatively, defendants argue that the Court should transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a)[20] for consolidation with the California litigation.[21] In considering a motion to transfer, a court must give weight to plaintiff's choice of forum, and the burden is on the moving party (defendant) to establish that the balance weighs in favor of transfer. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Given this deference to plaintiff's forum choice, "transfer should be denied where the factors to be considered are evenly balanced or only slightly favor a transfer...." *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F.Supp. 52, 54–55 (D.Del. 1975) (quoting *Scovill Mfg. Co. v. Sunbeam Corp.*, 357 F.Supp. 943, 946 (D.Del. 1973)).

■ Defendants are correct when they identify the "strong judicial policy favoring patent controversies to be settled in a single forum." *See Dentsply*, 553 F.Supp. at 295. However, they misapply that policy in urging transfer of this action to California. Defendants fail to address the fact that the Bristol–Erbamont action was already pending in this district before the filing of either the California case or the instant suit. *See Chisum* § 21.02[4], at 21–115 ("primary principle of priority is that of the sequence of filing"). As early as March 3, 1989, the issues of the validity and enforceability of the '124 patent were before this Court.

Central to both the Bristol and the Cetus litigation is the validity and enforceability of the '124 patent. Bristol and Cetus will likely seek to depose many of the same Erbamont personnel in Stamford, Connecticut, and Columbus, Ohio, and the inventors of the '124 patent who reside in Milan, Italy. Similarly, Bristol and Cetus will likely seek discovery of many of the same documents from Erbamont. Some degree of coordinated discovery in this district on the issues of the validity and enforceability of the '124 patent would serve judicial economy.

Defendants are also correct when they assert that all of the necessary parties are present in the California litigation. However, whether all those parties will remain part of that action is another matter entirely. As noted above, there is pending in that case a motion to dismiss for lack of jurisdiction as to Farmitalia, Erbamont N.V. and Montedison. Resolution of that motion is of course a matter for the Northern District of California. There is in any event a distinct possibility that the California court may dismiss the action as to these three defendants. Transferring the Delaware action to California because of the presence of certain parties there, only to have that court dismiss those parties, hardly serves the interests of judicial economy.

Defendants assert that they would be prejudiced by litigation in this district against Erbamont because this action does not contain the non-patent law claims raised in the California litigation. However, nothing would preclude the defendants from raising its claims for relief under the antitrust laws and unfair competition laws by way of counterclaim against Erbamont in this action.[22] The fact that

---

**20.** 28 U.S.C. § 1404(a) states:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**21.** The parties do not dispute that the Northern District of California is a district where this action "might have been brought."

**22.** Defendants claim that only the Northern District of California has jurisdiction over Erba-

mont, Erbamont N.V., Farmitalia and Montedison. For this proposition they depend heavily on *Velcro Group v. Billarant*, 692 F.Supp. 1443, 10 U.S.P.Q.2d 1115 (D.N.H.1988). In *Billarant*, the court held that, in a declaratory judgment action for patent infringement, venue is proper in the forum jurisdiction when notice-of-infringement letters are sent to the forum state and the brunt of the injury complained of is felt in the forum state. *Id.* 692 F.Supp. 1443, 10 U.S.P.Q.2d at 1121. Defendants analogize the facts of *Billarant* to those of the present case, in

the Cetus entities might not be able to bring their non-patent law claims against Farmitalia, Erbamont N.V. and Montedison because those companies are not parties here is not sufficient reason to transfer this action to California.

The section 1404(a) factors of "convenience of parties and witnesses" and "interest of justice" do not weigh in favor of the California forum any more so than Delaware. It is true that the Northern District of California would be a much more convenient forum for Cetus and its related companies. However, California is no more convenient than Delaware for Erbamont and the parties from whom discovery will likely be obtained. While the records and witnesses of Cetus, Cetus Generic and CBVT are in California, Erbamont's records and witnesses are in Ohio, Connecticut, Washington, D.C., Maryland, New York and Florida. Ben Venue's records and witnesses are located in Ohio. The inventors of the '124 patent and related patent personnel are in Italy.

In sum, the majority of the witnesses and records likely to be subject to discovery in this and the Bristol case are in the eastern half of the United States or in Europe. The best that can be said in favor of the California forum is that it is more convenient for Cetus, Cetus Generic and CBVT. Delaware, conversely, is more convenient to a majority of the witnesses and records, and is the forum where the prior-filed Bristol case is already pending. Consideration of both the Bristol–Erbamont and Erbamont–Cetus cases in this district best serves the interest of justice.[23] Transfer to California pursuant to section 1404(a) is therefore inappropriate.

which a notice-of-infringement letter was sent to California and representatives of Erbamont N.V. actually travelled to California to discuss potential infringement. *See generally* 5 D. Chisum, *Patents* § 21.02[3], at 21–98 (1988).

The Court expresses no opinion on the propriety of jurisdiction over these defendants in California, as that is an issue for the California court.

## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or to transfer is conditionally denied. The Court will enter an Order in accordance with this Opinion. Upon submission of the appropriate affidavits pursuant to that Order, the Court will enter a further Order denying defendants' motion.

**23.** Two of the prime components of the "interest of justice" are the conservation of judicial resources and the prevention of inconsistent adjudications. *Smithkline Corp. v. Sterling Drug, Inc.,* 406 F.Supp. 52, 55–56 (D.Del.1975); *see also Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 147 (D.Del.1985). The strong policy favoring litigation of related claims before the same tribunal is particularly applicable in patent cases, given the extreme factual complexity of the underlying issues. *Smithkline,* 406 F.Supp. at 56.