UNITED MERCHANTS AND MANU-
FACTURERS, INC., Plaintiff,

v.

James M. HENDERSON, Defendant.

Civ. A. No. C79–236R.

United States District Court,
N. D. Georgia,
Rome Division.

May 9, 1980.

Francis T. Carr, Albert J. Breneisen, Kenyon & Kenyon, New York City, Charles M. Shaffer, Jr., King & Spalding, Atlanta, Ga., for plaintiff.

Thomas C. Shelton, Kilpatrick & Cody, Atlanta, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This is an action for a declaratory judgment of patent invalidity, non-infringement and unenforceability of United States Letters Patent No. 3,969,780. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 2201 and 2202 and 28 U.S.C. §§ 1331, 1332 and 1338(a). Presently before the Court is defendant's motion to dismiss or, in the alternative, to stay the instant action.

United States Letters Patent No. 3,969,-780, entitled "Continuous Carpet Dyeing Process," was issued on July 20, 1976, to defendant James Henderson. On August 11, 1978, defendant's attorney, George M. Thomas, wrote plaintiff with respect to the subject patent. In that letter, defendant's attorney informed plaintiff of the existence of the patent and questioned plaintiff as to whether or not the process used by UM&M infringed on this patent. This letter was followed by various communications between plaintiff and defendant and between defendant and one of plaintiff's licensees with respect to the subject patent and the process being used by plaintiff and plaintiff's licensee. In a letter dated September 13, 1979, defendant's litigation counsel stated to plaintiff and plaintiff's licensee that the process being utilized by them constituted an infringement of defendant's patent and that defendant intended to take such steps as were necessary to protect his rights under the patent. On November 8, 1979, plaintiff filed the complaint in this case, seeking a declaratory judgment of invalidity, non-infringement and unenforceability of the subject patent. The complaint alleges, in part, that the patent is invalid because the invention claimed therein was anticipated and/or rendered obvious by prior art. On December 14, 1979, defendant filed an application in the Patent Office for reissue of the patent pursuant to 35 U.S.C. § 251 and 37 C.F.R. § 1.175. This procedure enables a patent owner to have additional prior art related to the subject patent to be considered by the Patent Office.

Defendant urges in its motion to dismiss that this Court lacks jurisdiction over the subject matter of these proceedings, as there exists no actual controversy so as to bring the instant lawsuit within the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201. In support of this contention, defendant asserts that he did not and never intended to threaten plaintiff with suit on the subject patent, has no present intention of filing or threatening such suit prior to conclusion of the pending patent reissue proceedings, and that plaintiff thus had no reasonable apprehension of an infringement suit so as to invoke 28 U.S.C. § 2201. Apart from the question of whether or not an actual controversy exists, defendant argues that the Court should exercise its discretion and dismiss the instant action on the grounds that the reissue proceeding will achieve the ends of justice more quickly and in a more expert forum, while conserving judicial resources.

Plaintiff in its response to defendant's motion asserts that clear and unequivocal threats were made by defendant against the plaintiff and its licensee, that as a result of these threats plaintiff was placed in a position of reasonable apprehension of the institution of litigation by defendant, and that the existence of this fear created an actual controversy within the context of 28 U.S.C. § 2201. In support of this argument, plaintiff cites the letter written September 13, 1979, by defendant's litigation counsel to plaintiff and plaintiff's licensee prior to institution of this lawsuit. This letter concludes with the following paragraphs.

In view of the foregoing, it is clear that Mr. Henderson's patent is not anticipated by the Roberts patent and that the process apparently being used by Galaxy [UM&M] constitutes an infringement of Mr. Henderson's patent. Therefore, we must insist that your company either terminate all further use of the process described in the Henderson patent or enter into a license agreement with Mr. Henderson.

We ask for your assurances either that your company is no longer practicing the Henderson patent [and purporting to license activities which infringe it] or that it is willing to enter into a license agreement. If we do not hear from you promptly, we will proceed, as directed by Mr. Henderson, to take such steps as are necessary to protect his rights under the patent.

 A charge of infringement in a case involving patents is sufficient to fulfill the § 2201 requirement of the existence of an actual controversy. *Sherwood Medical Industries, Inc. v. Deknatal, Inc.*, 512 F.2d 724, 727 (8th Cir. 1975). It is not necessary that a party be directly charged with patent infringement, as a justiciable controversy exists even though a charge is indirect if the party has a well-grounded fear that, should it continue its course of action, an infringement suit may result. *VanWyck International Corp. v. Scovill Mfg. Co.*, 184 U.S.P.Q. 572 (S.D.N.Y.1974). The concluding paragraphs of the above-quoted letters clearly allege infringement of defendant's patent by plaintiff and plaintiff's licensee. Indeed, defendant concedes in its brief that the final sentence of the letter could arguably be interpreted to imply such a threat. Defendant's statement that it had no intention of filing or threatening a lawsuit prior to conclusion of the pending reissue proceedings does not negate the existence of a controversy so as to preclude consideration under the Declaratory Judgment Act. The plaintiff in this action is entitled to seek an adjudication of its rights under that act.

 With respect to defendant's argument that apart from the existence of an actual controversy, this Court should not exercise its jurisdiction under the Declaratory Judgment Act, the Court notes that two criteria for consideration in assuming jurisdiction, cited by both plaintiff and defendant, are "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir.

1966) (quoting Borchard, *Declaratory Judgments* 299 (2d ed. 1941)). Defendant argues that the Patent Office is a more appropriate forum for resolution of the issues in this lawsuit. However, the Patent Office cannot afford plaintiff all the relief which it requests and which it is entitled to under the Declaratory Judgment Act. For example, the Patent Office does not have the power or authority to declare a patent invalid. *United States v. Marifarms, Inc.*, 345 F.Supp. 858 (D.Del.1972). The original patent remains intact even if the reissue claims are found unpatentable by the Patent Office. *Id.* Further, dismissal could result in a delay in the resolution of the issues in this case as the expedited procedures in the Patent Office are applicable only to reissue applications currently involved in litigation. *See*, 983 O.G. 24 (June 26, 1979). As the record indicates an actual, justiciable controversy between the parties within the meaning of 28 U.S.C. § 2201, defendant's motion to dismiss is denied.

 Defendant has requested in the alternative that this action be stayed pending the determination of the reissue application by the Patent Office. In deciding whether or not a stay should be ordered in a given case, a district court must evaluate the possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to fulfillment of judicial objectives of simplification of the issues in question and trial of the case. *Choat v. Rome Industries, Inc.*, 480 F.Supp. 387 (N.D.Ga.1979). *See also, CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The benefits of allowing examination of a reissue application before continuing with patent litigation were well stated in *Fisher Controls Co., Inc. v. Control Components, Inc.*, 443 F.Supp. 581, 582 (S.D.Iowa 1977):

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

These benefits are equally applicable in the instant case. Grant of a stay is particularly appropriate in this case, as the lawsuit is in its earliest stages and as the Patent Office has recently developed expedited procedures for reissue applications of patents that are the subject of an ongoing lawsuit. *See, Choat v. Rome Industries, supra.* That defendant voluntarily sought a reissue application rather than through order of the Court is irrelevant to a determination of whether or not a stay should be granted. After careful consideration of all of the interests involved in the subject case, the Court concludes that the advantages to be gained by use of the expedited Patent Office procedure clearly outweigh any possible disadvantages.

ACCORDINGLY, with respect to defendant's motion to dismiss or in the alternative to stay the instant action it is hereby ordered:

A. That the proceedings in this action are stayed for a period to include the date upon which the U.S. Patent and Trademark Office shall render its final ruling on the question of reissuance of the patent-in-suit. This stay is subject to any modification the Court may deem appropriate.

B. That defendant shall promptly serve plaintiff with copies of all correspondence, papers, and other documents filed with and received from the Patent and Trademark Office in connection with the application for reissue of the patent-in-suit and proceedings thereon.

C. That plaintiff will promptly serve upon defendant copies of all correspondence, papers, and other documents which plaintiff files with and receives from the Patent and Trademark Office in connection with the application for reissue of the patent-in-suit.

D. That defendant shall invite the plaintiff upon reasonable notice to attend all interviews before the Patent and Trademark Office, subject to approval from the Patent and Trademark Office; and

E. That three months from the date of this Order, the parties shall report in writing to the Court the status of the proceedings on the application for reissue.