**UNITED SWEETENER USA, INC., and Holland Sweetener Company, Vof, Plaintiffs,**

v.

**The NUTRASWEET COMPANY, Defendant.**

**Civ. A. No. 89–245–JRR.**

United States District Court, D. Delaware.

June 10, 1991.

John Mulford of Theisen, Lank, Mulford & Goldberg, Wilmington, Del. (Carl G. Love (argued), Chris Comuntzis, Lynn E. Eccleston and Jeffrey A. Simenauer of Cushman, Darby, & Cushman and Thomas J. Macpeak and Peter D. Olexy of Sughrue, Mion, Zinn, Macpeak & Seas, Washington, D.C., of counsel), for plaintiffs.

Charles S. Crompton, Jr. of Potter, Anderson & Corroon, Wilmington, Del. (Robert G. Sugarman (argued), and Steven D. Glazer of Weil, Gotshal & Manges, New York City, and Robert L. Baechtold and Henry J. Renk of Fitzpatrick, Cella, Harper & Scinto, New York City, of counsel), for defendant.

## OPINION

ROTH, District Judge.

This declaratory judgment action was brought by United Sweetener, USA, Inc. ("United Sweetener") and Holland Sweetener Co., Vof ("Holland Sweetener"), seeking among other relief a declaration of the invalidity of two patents for sweetening compositions, U.S. Patent No. 3,492,131 ("the '131 patent") and U.S. Patent No. 3,780,189 ("the '189 patent"). These two patents are the property of the defendant, Nutrasweet Co.

In our opinion of March 22, 1991 ("*Nutrasweet I*"), 760 F.Supp. 400, we disposed of cross-motions for summary judgment on Count III of the complaint and a motion to dismiss Count IV. We also decided that we had jurisdiction over Counts I and II despite Nutrasweet's promise not to sue for infringement of the '189 patent until the conclusion of a reexamination of that patent by the Patent and Trademark Office ("the PTO"). In *Nutrasweet I*, we discussed the possibility of staying further

proceedings related to Counts I and II pending the outcome of the reexamination. We did not, however, decide this issue because no motion to stay had been filed or briefed.

Nutrasweet has now moved to stay all proceedings, including discovery, with regard to Counts I and II until the reexamination and all appeals therefrom are concluded. The plaintiffs have urged us not to grant the stay. In the event, however, that a stay is deemed appropriate, the plaintiffs want to continue with discovery and request that any stay imposed be lifted immediately when the Board of Patent Appeals and Interferences ("the Board of Patent Appeals") has ruled on the pending appeal. We heard argument on the motion to stay on May 13, 1991, and ruled from the bench at that time that we would stay all proceedings until the Board of Appeals had come to a decision, but no longer than that. This is the promised written opinion setting out our reasons for granting the stay.[1]

## I. FACTS

In considering whether to grant a stay, it is appropriate to review the likely scope of litigation, involving the '189 patent, in order to determine the impact a stay may have. We will begin this review with an examination of the allegations made in Counts I and II of the complaint. Count I generally alleges that the '189 patent is unenforceable because Nutrasweet engaged in inequitable conduct in procuring the patent. Specifically, the plaintiffs allege that Nutrasweet (1) made false representations to the Patent Examiner regarding prior art, (2) presented data in support of patentability which was known to lack probative value, and (3) falsely represented that there was no material prior art. These three forms of inequitable conduct allegedly began with a 1969 patent application. In this document, which the plaintiffs claim eventually led to the '189 patent, Nutrasweet stated that no prior art had been found after a search of the literature.

---

**1.** We learned on May 29, 1991, that the Board of Appeals reached a decision on May 24, 1991, affirming the rejection of all of the claims on appeal. For that reason, our order granting the stay will also then lift the stay. *See infra* notes 6 & 8.

Plaintiffs claim that this statement was false in that there was extant prior art. Another alleged falsehood relates to the application's treatment of the effect upon sweetening of a mixture of aspartame and another sweetener, saccharin. The application's specification states that such a mixture would exhibit a potentiating sweetening effect, in sharp contrast to the merely cumulative effect of mixing cyclamate and saccharin. Plaintiffs contend that this statement was rendered false when, soon after the submission of the application, Nutrasweet received test results showing that mixtures of cyclamate and saccharin indeed exhibited potentiating sweetening effects. According to the plaintiffs, Nutrasweet did not reveal these results to the Patent Examiner during the ongoing prosecution of the application.[2]

The Examiner who considered this first application rejected all of its claims because the claimed subject matter was obvious and because the purported synergism of aspartame and saccharin either had not been adequately shown or was not unexpected. In response to the rejection, Nutrasweet claimed that it was unaware of any prior art which indicated that synergism would be expected. According to the plaintiffs, this statement was false. To further contradict the Examiner's assertion that the claims were too broad, Nutrasweet also responded that synergism would occur no matter what relative amounts of aspartame and saccharin were used. The plaintiffs maintain that Nutrasweet then knew, or should have known, that this statement too was false.

After Nutrasweet filed its response, the Examiner, on June 15, 1971, allowed claims 5, 6, and 7 of the application, but limited them to a composition having a mixture of aspartame and saccharin at the specific weight ratio of 6.25 to 1. He rejected all other claims. On July 15, 1971, the Examiner told Nutrasweet's attorney of record that the PTO would allow the rejected claims if additional affidavits and data showed a synergism. Nutrasweet did not respond to this interview. For the moment, Nutrasweet seemed to have abandoned its application.

The patent application was not, however, dormant for long. On September 13, 1971, Nutrasweet filed a continuation-in-part ("CIP") application that contained a revised and enlarged disclosure of the invention. The CIP application deleted examples referring to a mixture of aspartame and saccharin at the 6.25 to 1 specific weight ratio, added other examples, added new text, and deleted the previously allowed claims 5, 6, and 7. The CIP application once again stated that the sweetening potency of a mixture of aspartame and a "known sweetening agent" would be enhanced and that this discovery was "completely unexpected and could not have been predicted from a knowledge of the art." The application further asserted that Nutrasweet had searched the literature for art "significantly pertinent to patentability," but to no avail. According to the plaintiffs, both of these statements were false because Nutrasweet failed to include in the CIP application prior art that was significant and material to patentability. The application instead merely repeated what had been cited in the prior "parent" application.

According to the plaintiffs, Nutrasweet's failure to disclose important information to the PTO did not end with the matter just described. Rather, the CIP was also false, they contend, because it failed to mention the fact that on July 7, 1969, Nutrasweet had filed a Belgian "patent of addition" that was granted on September 15, 1969, and published on December 16, 1969. This publication occurred more than one year prior to the CIP application filing date but was never cited in that application. According to the plaintiffs, the mere existence of the Belgian patent constituted a statutory bar to patentability of the '189 claims

---

2. The alleged falsehood was compounded, say the plaintiffs, when Nutrasweet in 1970 filed a number of foreign patent applications that completely omitted reference to the sweetening effect of mixing cyclamate and saccharin.

under 35 U.S.C. §§ 102(b), (d)[3] and 103.[4] Nevertheless, after Nutrasweet amended the claims in the CIP application, the Examiner issued the '189 patent on December 18, 1973.

Count II alleges that the '189 patent is invalid over both the prior art cited in connection with the inequitable conduct claim and "perhaps other prior art not yet identified." The same Count asserts that the patent is invalid over the previously mentioned Belgian patent of addition.

The '189 patent stood free from challenge until March 15, 1988, when Holland Sweetener filed a Request for Reexamination[5] of the '189 patent. The PTO granted this request on May 2, 1988, ruling that substantial new questions of patentability affecting claims 1 through 19 of the '189 patent had arisen. On August 8, 1988, the Examiner rejected all the '189 claims as invalid over prior art and as obvious. Nutrasweet responded in November 1988 and proposed that the specification of the '189 patent be amended by deleting two "inaccurate" sentences it had "inadvertently" included. These sentences were:

Thus, in known sweetening mixtures, e.g. saccharin and cyclamate, the sweetening effects are cumulative. There is no potentiating effect of one agent upon the other.

On December 8, 1988, Holland Sweetener filed a second Request for Reexamination; the PTO granted this request on February 6, 1989, on the ground that further substantial new questions of patentability were raised. On May 1, 1989, the PTO entered a final rejection of the claims of the '189 patent. Pursuant to 35 U.S.C. § 7, Nutrasweet appealed this decision to the Board of Patent Appeals, which heard argument on May 6, 1991. Oral argument on the present motion to stay was held before us on May 13, 1991.[6]

## II. DISCUSSION

### A. *Legal Standards*

■■■■ The present dispute requires us to choose between postponing scrutiny of the enforceability and validity of the '189 patent and entertaining the plaintiffs' request for a declaratory judgment. In a patent proceeding, courts "have inherent power to manage their dockets and stay proceedings,

3. 35 U.S.C. § 102 provides in pertinent part that a person shall be entitled to a patent unless:
    (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or....
    ....
    (d) the invention was first patented or caused to be patented, or was the subject of an inventor's certificate, by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application for patent or inventor's certificate filed more than twelve months before the filing of the application in the United States....
35 U.S.C. § 102.

4. Section 103 provides that an invention may not be patented, even if not identically described or disclosed under section 102, if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.

5. Reexamination is a procedure by which any person may challenge the patentability of an

extant patent on the basis of prior art. 35 U.S.C. § 301. Such a challenger must file a formal request for reexamination. 35 U.S.C. § 302. If the Commissioner of Patents and Trademarks finds that the request raises a substantial new question of patentability, 35 U.S.C. § 303, the Commissioner orders a reexamination. 35 U.S.C. § 304. These reexamination proceedings are then conducted with only the PTO and the patent owner participating. 35 U.S.C. § 306. The Examiner in charge of the reexamination either upholds or rejects the patent. *See* 35 U.S.C. §§ 132, 305. A patentee whose claims are twice rejected, as in fact has occurred here, may appeal to the Board of Patent Appeals and Interferences. 35 U.S.C. § 134. A patentee who is not satisfied with the latter administrative review may appeal to either the United States Court of Appeals for the Federal Circuit, 35 U.S.C. § 141, or the United States District Court for the District of Columbia. 35 U.S.C. § 145.

6. As noted above, on May 13 we granted a stay until such time as the Board of Patent Appeals had ruled on the appeal before it. On May 24, 1991, the Board of Patent Appeals affirmed the rejection of the claims of the '189 patent. *Ex parte The Nutrasweet Company,* —— U.S.P.Q.2d —— (Bd.Pat.App. & Int'f 1991). *See supra* note 1.

including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1425–26 (Fed.Cir.1988) (citations omitted). Our consideration of whether to grant a stay in this matter is also informed by the terms of the Declaratory Judgment Act and by judicial construction of that Act. The Act provides, in pertinent part, that:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Act itself does not require a district court to declare the rights and legal relations of the parties. Rather, it explicitly notes that we *may* take such action. 28 U.S.C. § 2201(a). The Act therefore is an "authorization for jurisdiction, not a command." *Erbamont, Inc. v. Cetus Corp.*, 720 F.Supp. 387, 392 (D.Del. 1990). Under the Act, the Court should refuse to proceed if it finds that a declaratory judgment action will not serve a useful purpose or is otherwise undesirable. *Id.* (quoting case). This Court thus must ask whether the requested declaratory judgment will (1) clarify and settle the legal relations in issue and (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the present action. *Id.*

B. *Analysis*

We first consider whether a stay should be imposed. Nutrasweet believes that litigating the '189 issues now would conflict with Congress's decision to provide, in the form of the reexamination process, an inexpensive and expedient alternative to formal adversarial proceedings. Furthermore, argues Nutrasweet, it would be better to stay proceedings, pending the outcome of the reexamination, because (1) if the patent is upheld, this Court will benefit from the PTO's scrutiny of the patent; (2) if the patent is ultimately invalidated, the suit will be dismissed; (3) completion of the reexamination process, including any appeals, will focus and simplify the issues, defenses, and evidence for trial; and (4) the cost of post-reexamination litigation in this Court will be reduced. In addition, Nutrasweet feels that a stay is particularly appropriate where, as here, little discovery has occurred and an answer to Counts I and II has not yet been filed. It would be unfair, states Nutrasweet, to litigate the '189 issues during the pendency of the reexamination because the plaintiffs, after all, initiated the process. Finally, Nutrasweet asserts that it will be prejudiced by the time and money it will have to spend on parallel litigation.

In urging this Court to proceed and not impose a stay, the plaintiffs protest that Nutrasweet, by "piecemealing its motions," is seeking to delay further resolution of this case. In this circumstance, argue the plaintiffs, Nutrasweet can maintain not only a threat against the plaintiffs and their customers, but an exclusive market as well. They complain in essence that Nutrasweet has given them a "Hobson's choice" of either entering the market during the reexamination (only to be slapped with an infringement action) or staying out of the market (but at great economic cost). The plaintiffs contend that a stay, in such a situation would contradict the purpose of the Declaratory Judgment Act. The plaintiffs further claim that because the present litigation is "in its later stages"—a characterization disagreed with by Nutrasweet—and because the entire reexamination is *ex parte* in nature, it would be inappropriate to stay proceedings. Finally, they complain that Nutrasweet is responsible for any prejudice it may feel because it filed motions to dismiss and for summary judgment "merely for the purpose of avoiding trial on the merits." The plaintiffs further note that the relevant '189 claims could expire before completion of the reexamination, thus insulating the patent from challenge.

In reply, Nutrasweet denies engaging in the dilatory tactics alleged by plaintiffs. Moreover, Nutrasweet notes that the plaintiffs, not Nutrasweet, not only waited four years to sue but also asked for the reexamination. In addition, Nutrasweet argues that a stay would not be "indefinite."

▉ Having carefully considered the arguments offered by both sides of the present dispute, we conclude that the most appropriate action to take is to stay our consideration of the issues raised in Counts I and II. As a general matter, when considering whether to grant a stay, "a district court must evaluate the possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *United Merchants & Mfrs., Inc. v. Henderson*, 495 F.Supp. 444, 447 (N.D.Ill.1980). We agree with Nutrasweet that the benefits of imposing a stay until the Board of Patent Appeals has reached a decision outweigh any associated burdens. First, we believe that waiting for the outcome of the PTO reexamination would be the most useful option in that it would simplify issues and aid in preparation for trial. *See United Merchants & Mfrs.*, 495 F.Supp. at 447 (stay pending completion of reissue proceeding). The '189 patent has twice been rejected in the reexamination process by administrative officials. It seems more efficient to allow the administrative study of the patent to conclude before we press on toward trial.

Our conclusion that proceeding with a parallel declaratory judgment action would add to—not subtract from—uncertainty, insecurity, and controversy is strengthened by the knowledge that the officials who twice rejected the '189 patent possess a great deal of expertise and experience in analyzing the merits of the petition for reexamination, as do the members of the Board of Patent Appeals. We, of course, feel fully competent to adjudicate the merits of the issues raised in Counts I and II.

At the same time, we find that the administrative review scheme set up by Congress will help to sharpen and simplify the issues and to organize discovery before the '189 patent once again darkens our door. As then Chief Judge Markey of the Federal Circuit has remarked, "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). Because the reexamination proceeding is at a relatively advanced stage and the declaratory judgment action is not, we determine that a stay is appropriate. With the case in this posture, it would waste already scarce public resources to go over ground already covered in the reexamination.

In deciding to impose the stay, we cannot ignore the fact that the plaintiffs themselves began the reexamination. They have benefitted from the substantive rulings obtained in that proceeding, so it is clear to us that they now seek only speed. The plaintiffs initiated the reexamination, they say, in the "belief and expectation that [they] would have the expeditious special dispatch proceeding that [they] anticipated." Transcript of October 31, 1990 Oral Argument at 12.[7] Having begun this process with great faith in a relatively new and unproven administrative process, they now are disappointed with its pace and come to us—again with the greatest hope—in search of a quicker disposition. Yet we cannot guarantee swifter results. Furthermore, we certainly do not wish to create unnecessary costs by participating in what one district court has properly labelled a "race to ... patent validity determination." *Hamilton Indus., Inc. v. Midwest Folding Prod. Mfg. Corp.*, No. 89–C–8696, 1990 WL 37642 at 2 (N.D.Ill. March 20, 1990) (WESTLAW, DCT database). Even if we assume that Nutrasweet may

---

7. *See* 35 U.S.C. § 305 ("All reexamination proceedings under this section, including any appeal to the Board of Appeals, will be conducted with special dispatch within the Office.")

try to slow the administrative portion of the reexamination, we cannot assure the plaintiffs that they will have a shorter wait on the civil docket in the District of Delaware. Given this uncertainty and the previously mentioned benefits of deferring to the PTO, we are hesitant to sweep away the substantial efforts and resources already expended in the reexamination.

The plaintiffs' worries about the *ex parte* nature of the PTO proceedings are of little concern to us. While the plaintiffs might not have been in a position to forecast the exact length of delay they would encounter in the PTO when they requested the reexamination, they knew from the start that they would have a minor role in what would unfold. Indeed, as we have noted, the plaintiffs have not suffered from the substance of the PTO rulings issued in their absence.

As the plaintiffs point out, a stay would, for a short period of time, allow Nutrasweet to maintain its exclusive right to sell products covered by the '189 patent's claims. In our view, however, this potential problem must be balanced with the benefits of completing the PTO proceedings which we have already discussed. Moreover, the stay imposed is not of indefinite length. Therefore, the plaintiffs' distress at being barred from the United States market does not prevent us from imposing a stay.

We reach the above conclusion mindful that there is authority in this District for the proposition that a stay may not be the best choice where reexamination proceedings are pending. In *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 711 F.Supp. 1205 (D.Del.1989), Judge Latchum stated that "[w]here such a stay could result in a tactical advantage to one party or the other, this Court will not employ its discretion to stay the ordinary course of its proceedings simply because the outcome of the Patent Office proceedings *may* moot the issues remanded." 711 F.Supp. at 1208 n. 9. However, the litigation in *Phillips Petroleum* had advanced very far—through trial, appeal, and remand—before one of the parties urged the district court

to stay further proceedings until reexamination ended. This is very different from the present litigation, where we have contended with only pretrial motions and where little, if any, discovery has been conducted on Counts I and II. It is also not clear in the present action whether our decision to stay the '189 issues until completion of the appeal to the Board of Patent Appeals could be seen to grant some "tactical advantage" to Nutrasweet. If the Examiner's rejection of the '189 patent is upheld by the Board of Appeals, Nutrasweet will not be able to assert the patent with ease. Even if a stay does create some advantage, we do not feel constrained to apply the principle articulated in *Phillips Petroleum* to a case that is still in its early stages. This is especially true where, unlike *Phillips Petroleum*, the party opposing the stay initiated the reexamination. *Compare, Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q.2d 1889, 1987 WL 6314 (N.D.Ill.1987) (granting stay pending outcome of reexamination even though complaint was filed before defendant initiated reexamination); *Ingro v. Tyco Indus., Inc.*, 227 U.S.P.Q. 69, 1985 WL 1649 (N.D. Ill.1985) (same).

In sum, while we are somewhat sympathetic with the plaintiffs' predicament, we have determined that it would be unwise to entertain a declaratory judgment proceeding at this stage. We conclude, therefore, that the most useful and appropriate action to take is to stay consideration of the '189 issues raised in Counts I and II until the Board of Patent Appeals renders its decision.

In making our determination as to the length of the stay which we will grant, we have considered Nutrasweet's argument that the stay should remain in effect until the completion of all possible appeals from the final decision of the Board of Patent Appeals.

However, even with the affirmance by the Board of Patent Appeals of the PTO's decision to invalidate the '189 patent, the PTO cannot cancel the patent until all appeals are concluded. *See* 35 U.S.C. § 307(a). Thus, Nutrasweet can prolong

the patent's life simply by appealing to the District Court for the District of Columbia or to the Court of Appeals for the Federal Circuit. Moreover, the PTO's application of its expertise would end at this point.

In addition, Nutrasweet could use a further appeal to its tactical advantage. We conclude that Nutrasweet would not appeal a decision by the Board of Patent Appeals which reversed the PTO's rejection of the claims of the '189 patent. Nutrasweet would only appeal an affirmance of the PTO's rejection. Thus, Nutrasweet, despite having three strikes against it, could appeal simply as a stratagem to permit it to continue to enjoy the exclusive right to sell products encompassed by the '189 patent. In addition, an extended stay would postpone even further our consideration of the inequitable conduct allegations that are made in Count I but could not be considered in the reexamination. It is for these reasons, therefore, that we have concluded that the stay should be lifted once the Board of Appeals has reached its decision.

The final issue is the scope of the stay— should it apply to discovery? Plaintiffs contend that staying discovery would be unfair because they have already waited two years to begin it. Moreover, the plaintiffs see no evidence that Nutrasweet would be prejudiced by proceeding with discovery. Nutrasweet, by contrast, believes that it would be expensive and wasteful to carry on discovery while a stay is in effect. Nutrasweet also complains that it would be unfair and prejudicial to force it to engage in discovery while it is litigating the reexamination that the plaintiffs started in the first place. In other words, the plaintiffs began the reexamination and should be prepared to live with the consequences.

Our analysis with regard to the more general issue of whether a stay should be issued at all applies with equal force here. For these reasons, we determine that dur-

ing the pendency of the stay no discovery should take place.

### III.  CONCLUSION

For the reasons stated above, all proceedings in this Court related to Counts I and II of the complaint are stayed pending final resolution of Nutrasweet's appeal to the Board of Patent Appeals.[8]

---

**8.**  With the Board of Appeals having affirmed the rejection of the claims of the '189 patent, the stay which we determined at oral argument to be appropriate will now be lifted and discovery will begin. An appropriate order granting and then lifting the stay will issue.