**GPAC, INC., Plaintiff,**

v.

**D.W.W. ENTERPRISES, INC., KRC Research Corporation, Global Consumer Services, Inc., and Herbert Abrams Company, Inc., d/b/a Aramsco, Defendants.**

**Civ. A. No. 90–3251(GEB).**

United States District Court, D. New Jersey.

March 31, 1992.

---

Peter Russell Freed, Trenton, N.J., for plaintiff, GPAC, Inc.

Edward Casper, Casper & Elias, Haddonfield, N.J., for defendant, KRC Research Corp.

E. Hunter Taylor, Gerstein, Cohen, Taylor & Grayson, Haddonfield, N.J., for defendant, Herbert Abrams Co., Inc.

Robert G. Shepard, Mathews, Woodbridge & Collins, Princeton, N.J., for counterclaimant, Global Consumer Services, Inc.

## MEMORANDUM AND ORDER

WOLFSON, United States Magistrate Judge.

Presently before this Court is the defendant's motion for a stay of the proceedings in this action pending determination of a reexamination proceeding in the United States Patent Office, United States Patent No. 4,604,111 [1] (hereinafter "GPAC" patent

---

**1.** The defendant, Global Consumer Services, Inc., filed the instant motion to stay these pro-

or "111" patent). Plaintiff, GPAC, Inc. (hereinafter "GPAC"), opposed a stay in this case. This matter is being considered pursuant to *Fed.R.Civ.P.* 78. The Court, having considered the moving and opposition papers, and for the reasons set forth below, grants the defendant's motion for a stay.

## BACKGROUND

Plaintiff GPAC filed this patent infringement action on August 8, 1990. In its complaint, the plaintiff charged that defendants, Global Consumer Services, Inc. (hereinafter "Global") and KRC Research Corporation (hereinafter "KRC"), were contributorily infringing, and inducing the infringement of the GPAC patent. The defendant D.W.W. Enterprises, Inc. (hereinafter "D.W.W.") was charged with directly infringing the GPAC patent. On November 19, 1991, the Court granted plaintiff's motion to amend the complaint to add an additional party defendant, Herbert Abrams Company, Inc. d/b/a Aramsco, and to add a count of tortious interference against Global.

The parties are currently engaged in discovery, with each of the original parties having served and answered interrogatories and document requests. Additionally, GPAC has taken depositions of four witnesses and has noted the need for further depositions in this matter.

Previously, in October, 1991, the defendants D.W.W. and KRC filed a similar motion for a stay of these proceedings pending the outcome of the re-examination proceedings in the United States Patent and Trademark Office (hereinafter "PTO"). At that time, the defendant Global did not join in the motion. This Court, by Memorandum and Order dated November 22, 1991, denied the motion to stay without prejudice on the basis that all defendants had not joined in the stay request. In the present motion, all defendants have joined in Global's request for a stay.

The history of the GPAC patent in suit merits a brief discussion since it has been subject to a prior re-examination proceeding in the PTO. In April, 1987, the president of Global, represented by Mr. Webster Harpman, filed a request to re-examine the GPAC patent in the PTO. PTO Examiner Tim Miles rejected the GPAC patent claims. Thereafter, the PTO Board of Patent and Appeals and Interferences reversed the examiner and affirmed the validity of all of the patent claims of the GPAC patent, including several new claims that were added during the course of the re-examination hearing.

A second request for re-examination of the GPAC patent was filed in the PTO on November 22, 1990 by Jimmy Wayne Simpson, Sr. The re-examination transmittal form request indicated that Mr. Simpson was represented by Mr. Webster Harpman, the same individual who represented defendant Global in the first re-examination. By strange coincidence, this second re-examination request was assigned to the same examiner, Tim Miles, who previously granted the first re-examination. On January 21, 1991, Examiner Miles granted the second re-examination request. In granting the request, Examiner Miles noted that a "substantial new question of patentability affecting Claims 1 through 29 of the United States Patent No. 4,604,111 is raised by the request for a re-examination". On July 31, 1991, a First Office Action in the re-examination rejected Claims 1 through 29 of the patent in suit. Thereafter, GPAC added new Claims 30 through 43. A Final Office Action was issued by Examiner Miles on December 4, 1991 rejecting all Claims 1 through 43. GPAC filed its Notice of Appeal to the Board on January 3, 1992.[2] The plaintiff approximates that the PTO appeal process concerning the second re-examination of the GPAC patent will take about nine

ceedings. The other defendants, D.W.W. Enterprises, Inc., KRC Research Corporation, Herbert Abrams Company, Inc. d/b/a ARAMSCO join in and adopt defendant Global Consumer's application for a stay and the arguments advanced in support of their motion.

2. Apparently GPAC re-filed and served its Notice of Appeal on January 17th to be certain that Global's counsel had been served with the notice.

months and expects that the Board will reach its decision toward the end of 1992. Therefore, a final determination by the PTO as to the validity of the GPAC patent is forthcoming.

Both plaintiff and defendants have informed this Court that the GPAC patent is involved in other actions currently pending throughout the United States. In the United States District Court for the Northern District of Iowa, GPAC has filed suit against a customer of the defendant Global, Environmental Management Services, Inc. ("EMS"). There, the defendants renewed an earlier motion to request a stay (the earlier motion having been denied) and the Iowa Court granted a stay pending resolution of the re-examination proceeding. A second case, presently pending in the United States District Court for the District of Delaware, *GPAC v. Performance Abatement*, Docket No. 89–274, also involves the same GPAC patent in issue. A similar motion for stay of the proceedings was granted February 11, 1992. In that matter, GPAC did not oppose a stay because substantially all discovery in the Delaware case had been completed with the exception of minor discovery matters. A third suit filed by GPAC against the trade association, NIAC, is presently pending in the United States District Court for the District of Columbia. It does not appear that this matter has been stayed nor has a stay been requested to date.

## DISCUSSION

The re-examination statutes do not expressly provide for a stay of court proceedings because "it is believed by the committee that stay provisions are unnecessary in that such power already resides with the court." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed.Cir.1988) quoting 1980 U.S.C.C.A.N. 6460, 6463. Specifically, Congress noted its approval of district courts liberally granting stays within their discretion:

> The bill does not provide for a stay of court proceedings. It is believed by the committee that *stay provisions are unnecessary in that such power already resides with the court* to prevent costly pre-trial maneuvering which attempts to *circumvent* the re-examination procedure (emphasis in the original).

*Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed.Cir.1983), *cert. den.* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983), citing H.R.Rep. No. 1307, Part I, 96th Congress, 2d Sess. (1980), U.S.C.C.A.N. 6460, 6463.

■ Thus, the courts have the inherent power to control and manage their dockets and stay proceedings, see *Landis v. North American Company*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), including the authority to order a stay pending conclusion of a PTO re-examination. *Control Laser Corp., supra*, 705 F.2d at 1342. See also *Amersham International PLC v. Corning Glass Works*, 618 F.Supp. 507, 509 (E.D.Mich.1984); *Rohm & Hass v. Mobile Oil Company*, 462 F.Supp. 732, 734 (D.Del.1978) (a motion to stay an action pending the resolution of a related matter in the United States Patent and Trademark Office is directed to the sound discretion of the court).

■ In the present matter, the order granting re-examination of the GPAC patent noted "a substantial new question of patentability"[3] affecting the claims of the '111 patent. Thus, the re-examination process requires the PTO to determine the validity of the patent in issue. Likewise, patent claim validity has been raised as a significant issue by the parties in this infringement action. Clearly then, there would be benefits to the District Court if

---

**3.** Re-examination is a relatively new procedure by which any person can request that the PTO re-examine or re-evaluate the patentability of an unexpired U.S. patent. A request for such a re-examination must be based upon prior art patents or publications which raise "a substantial new question of patentability." Generally, the prior art patents or printed publications cited in the request are ones which were not considered by the patent examiner during the patent application process. Once a re-examination request is granted, a patent examiner who is familiar with the technology involved with patent conducts the re-examination and is obligated to do so "with special dispatch." 37 CFR Sec. 1.550(a). *Emhart Industries v. Sankyo Seiki Mfg*, 3 U.S.P.Q.2d 1889, 1890, 1987 WL 6314 (N.D.Ill.1987).

this action were stayed so as to shift to the PTO the significant, and often times technical, issue of patent claim validity. See *Emhart Industries v. Sankyo Seiki Mfg.*, 3 U.S.P.Q.2d 1889, 1890, 1987 WL 6314 (N.D.Ill.1987). In *Emhart*, the court enumerated many advantages to the District Court in shifting the determination of the validity to the PTO, including:

(1) All prior art presented to the Court will have been first considered by the PTO, with its particular expertise. (2) Many discovery problems relating to the prior art can be alleviated by the PTO examination. (3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed. (4) The outcome of the re-examination may encourage a settlement without the further use of the Court. (5) The record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation. (6) Issues, defenses and evidence will be more easily limited in pre-trial conferences after a re-examination. (7) The cost will likely be reduced both for the parties and the Court.

*Id.*, citing *Fisher Controls Co., Inc. v. Control Components, Inc.*, 443 F.Supp. 581, 582 (S.D.Iowa 1977). As noted by Chief Judge Markey, writing for the Court of Appeals for the Federal Circuit in *Gould v. Control Laser Corp., supra.*, "[o]ne purpose of the re-examination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the re-examination proceeding)." *Id.* 705 F.2d at 1342.

Courts have also emphasized the benefit of the PTO's expertise when issues relevant to prior art are involved. Certainly, the PTO may be in a better position than the Court to evaluate the validity of a patent in view of prior art references. In fact, the patent re-examination procedure was clearly intended to provide the federal courts with the expertise of the PTO. As the Federal Circuit noted:

The bill's proponents foresaw three principle benefits. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. *Second, the procedure will allow courts to refer patent validity questions to the expertise of the Patent Office. See Senate Hearings at 1, wherein Senator Bayh said that re-examination would be "an aid" to the trial court "in making an informed decision on the patent's validity.* Third, re-examination would reinforce "investor confidence in the certainty of patent rights" by affording the PTO a broader opportunity to review "doubtful patents". (emphasis added)

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed.Cir.), *modified on other grounds* 771 F.2d 480 (Fed.Cir.1985) (Referring to patent re-examination: Hearings on S.1679 before the Committee on the Judiciary, 96th Congress, First Session No. 1 (1979)); *see also Grayling Industries, Inc. v. GPAC, Inc.*, 19 U.S.P.Q.2d 1872, 1873, 1991 WL 236196 (N.D. of Ga.1991). Similarly, in *United Sweetner U.S.A., Inc. v. Nutrasweet Company*, 766 F.Supp. 212 (D.Del. 1991), the court remarked that the benefits of granting a stay until the outcome of the PTO re-examination "would be the most useful option in that it would simplify issues and aid in preparation for trial." *Id.* 766 F.Supp. at 212. This Court is equally impressed that the PTO may be in a better position to evaluate the validity of the '111 patent especially in view of the prior art references. The requisite technical acumen is better represented in the PTO.

Despite the numerous advantages of a stay pending a PTO determination, several courts have denied a stay where it would cause undue prejudice or present a clear tactical disadvantage to the non-moving party. For instance, in *E.I. DuPont de Nemours and Co v. Phillips Petroleum Co.*, 711 F.Supp. 1205 (D.Del.1989), the court held that "[w]here such a stay would result in a tactical advantage to one party or the other, this Court will not employ its discretion to stay the ordinary course of its proceedings simply because the outcome of the patent proceedings may moot the is-

sues remanded." *Id.*, 711 F.Supp. at 1208 n. 9. Notably, however, in the *DuPont* case the litigation had advanced through trial, appeal and remand before one of the parties requested a stay pending re-examination.

Similarly, another district court denied the defendant's motion to stay based upon its concern for conserving time and resources and in bringing a three year old case to resolution. The court acknowledged some duplication of effort in light of the re-examination proceeding, but gave this concern little weight since that proceeding was a second re-examination and the court would have the benefit of the technical evaluation of the patent from the first re-examination proceeding. *Rosenthal Manufacturing Company v. Thermal Equipment, Inc.*, No. 85–2630–S (D.Kan., October 12, 1988) (1988 WL 383034, 1988 U.S. District Lexis 12241.). Here, as well, this case has the benefit of a prior re-examination proceeding which had evaluated technical issues of validity. However, since this action is in its early stages of litigation, there undoubtedly would be substantial duplication of effort if this case were to proceed conjunctively with the second re-examination proceeding. Moreover, during the second re-examination proceeding, GPAC added new claims 30 through 43 which were not evaluated during the first re-examination process. Therefore, the evaluative findings in the first proceeding may have little weight in this subsequent proceeding where new patent claims are in dispute. *See United Sweetner U.S.A.*, 766 F.Supp. at 217 (despite the fact that the '189 patent had been twice rejected in prior re-examination proceedings the court believed it to be more efficient to allow the administrative study of the patent to conclude before pressing on toward trial).

Most often, cases have been denied a stay due to the late stage of litigation, the fact that discovery was or would be almost completed, or the matter had been marked for trial. *See Enprotech Corp. v. Auto Tech Corp.*, 15 U.S.P.Q.2d 1319, 1320, 1990 WL 37217 (N.D.Ill.1990); *Freeman v. Minnesota Mining*, 661 F.Supp. 886, 888 (D.Del.1987). In *Freeman*, discovery had

concluded and the first of the two patent infringement suits was filed two and a half years earlier. More significantly, however, the court considered other factors in denying the defendant's request for a stay. First, the defendant was aware of all three documents on which the re-examination petition was based in August, 1986, prior to filing the petition for re-examination before the PTO on April 6, 1987. Thus, the court viewed the defendant's request to stay pending re-examination as a mere dilatory tactic. Second, the court noted that the issue on re-examination—three printed publications—were not highly technical and therefore the Court would be able to rule on this issue without the PTO's technical assistance. *Freeman*, 661 F.Supp. at 888.

In contrast, other courts have granted stays pending re-examination proceedings despite the well-developed posture of the litigation. *See e.g., Gould v. Control Laser Corp., supra* (stay granted five years after commencement of litigation and 20 days before scheduled trial date); *Loffland Brothers Co v. Mid-western Energy Corp.*, 225 U.S.P.Q. 886, 1985 WL 1483 (W.D.Okla. 1985) (stay granted after substantial discovery, pre-trial conference and scheduled trial date); *Emhart Industries, Inc., supra* (stay granted 18 months after significant discovery, but no trial preparation); *Grayling Industries, Inc. v. GPAC, Inc., supra* (action filed in March, 1989, final pre-trial order signed March 14, 1991 with discovery completed and only trial remaining in case).

■ Here, suit was filed approximately 16 months ago and some discovery has been undertaken. Substantial discovery, however, has yet to occur. Moreover, a new defendant, Herbert Abrams Company, Inc. d/b/a Aramsco, has been added which will require additional discovery in this matter. A final pre-trial order will not be submitted for some time due to anticipated needs for discovery and thus, a trial date will not soon be assigned. Furthermore, the plaintiff GPAC has not demonstrated that substantial expense and time has been invested in this litigation which would militate against a further delay of disposition

of this matter. In short, this case is far from resolution at this juncture. Clearly then, this case does not rest in the same posture as those cases where protracted and expansive discovery has been expended and trial is imminent. *See, e.g., Digital Magnetic Systems, Inc. v. Ansley*, 213 U.S.P.Q. 290, 1982 WL 52160 (W.D.Okla. 1982) (the Court commented that "parties should not be permitted to abuse the [re-examination] process by applying for re-examination after protracted, expensive discovery or trial preparation"); *The Toro Company v. L.R. Nelson Corporation*, 223 U.S.P.Q. 636, 638, 1984 WL 1244 (N.D.Ill. 1984) (denying stay in a three and a half year old case pending summary judgment motion where the "stay would accomplish little other than the delay of disposition of the suit which has until now run an overly protracted course"). Therefore, given the relative infancy of this case, a stay pending re-examination would not unduly delay disposition, nor would it cause undue prejudice to the plaintiff.

Next, the plaintiff argues that since the GPAC patent has already been re-examined by the PTO, unsuccessfully to the defendant Global, repetitive re-examination requests should not be used to "bootstrap a stay". In short, the plaintiff accuses the defendant of making the second re-examination request solely for the purpose of delaying this litigation. In support of this argument, the plaintiff has noted that the defendant delayed unnecessarily in filing its motion for a stay despite the fact that the request for second re-examination was filed more than a year ago, in November, 1990. Moreover, the plaintiff points out that the party filing for the second re-examination is represented by the same individual, Mr. Webster Harpman, who represented defendant Global in the first re-examination. Altogether, these circumstances might suggest that Global has less than pure motives in seeking this stay. But they do not prove *egregious* dilatory conduct on the part of the defendants. They are merely suggestively coincidental. Moreover, since this court already finds that the benefits of granting a stay outweigh the burdens, it need not determine

whether one of several defendants is trying to bootstrap a stay by its filing of a second re-examination request.

Finally, the plaintiff strenuously argues that this matter should not be stayed unless all defendants agree to be bound by the outcome of the PTO re-examination proceeding. To support this position, GPAC highlights the case cited by defendant Global in support of a stay, *Emhart Industries v. Sankyo Seiki Manufacturing, supra*. In that case, the Court noted that a re-examination proceeding could very well resolve significant issues of litigation with finality since the defendant had assured the Court that it would not contest the issues decided by the PTO. *Id.*, 3 U.S.P.Q.2d at 1892. Nevertheless, this was not the court's only basis in granting a stay in that matter, nor was it the predominant factor considered by the court. Plaintiff had advanced four arguments against granting a stay, each of which the court had rejected. In the fourth argument, the plaintiff claimed that the re-examination proceedings would not solve anything with finality because the PTO's decision on the patents validity would not be binding. The court did not agree for two reasons: one of which was that the defendant would not contest issues decided by the PTO. But first and foremost, the court found that the re-examination proceedings would simplify the issues and reduce the complexity of trial. *Id.*

Moreover, this same argument was succinctly addressed in *Grayling Industries v. GPAC, supra*. There the Court determined that the efficiency of a final PTO determination outweighs any added expense arising from a stay of litigation even without an agreement to be bound by the PTO. *Id.*, 19 U.S.P.Q.2d at 1874. The court noted that "[o]n the one hand, if the patents are declared unpatentable, this action would be moot. On the other hand, even though plaintiffs have not agreed to be bound by a PTO finding of a valid patent, such a finding would be admissible and carries a presumption of validity." *Id.* Furthermore, none of the cases discussed herein where a stay had been granted

pending resolution of re-examination proceeding, required that the parties agree to be bound by the PTO decision.

In conclusion, this Court finds that granting a stay in these proceedings would not unduly prejudice the plaintiff by delaying disposition in this matter. In fact, a stay would surely conserve the time and resources of the court as well as the parties. It is likely that a record of the re-examination would reduce the complexity and length of this litigation, more easily define issues, defenses and evidence before trial, reduce litigation costs and discovery problems, and may further encourage a settlement without further court intervention. For all of these reasons, this court is convinced that the benefits of granting a stay clearly outweigh any burdens, and therefore, the defendant's motion for a stay of these proceedings, including discovery, is granted.

### ORDER

IT IS on this 31st day of March, 1992,

ORDERED that the defendant's motion for a stay of these proceedings, including discovery, be and is hereby granted.